William B. INMAN, Jr.,
Appellant Pro Se,

v.

MISSOURI DEPARTMENT
OF CORRECTIONS, et
al., Respondent.

No. WD 63360.

Missouri Court of Appeals,
Western District.

June 22, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 2004.

William B. Inman, Jr., St. Louis, pro se.

Susan K. Glass, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and PATRICIA BRECKENRIDGE, Judge.

JOSEPH M. ELLIS, Chief Judge.

William Inman appeals from a judgment entered in the Circuit Court of Cole County denying a petition for declaratory judgment and injunctive relief that he had filed against the Missouri Department of Corrections. Having been convicted of two counts of sale of a controlled substance, Appellant is presently in the custody of the Department of Corrections serving concurrent twelve-year sentences. The full term of his sentences will run on April 21, 2007.

In October 2001, Appellant entered the long-term drug treatment program offered by the Department at the Maryville Treatment Center (MTC).[1] While in that facility, on December 26, 2001, Appellant filed a *pro se* petition for declaratory judgment and injunctive relief in the Circuit Court of Cole County alleging that various aspects of the drug treatment program violated the provisions of the United States Constitution and the Missouri Constitution prohibiting the establishment of a state religion. Appellant objected to the use of concepts adopted from Alcoholics Anonymous (AA) and Narcotics Anonymous (NA), the use of certain treatment tools, forced participation in prayer, and the presence of religious symbols throughout the facility,[2] which was a converted Catholic convent.

1. During the course of his incarceration, Appellant participated in five different drug treatment programs. He successfully completed two of those programs. Following his successful completion of each of those two programs, Appellant was released on parole but subsequently had his parole revoked after testing positive for drug use.

2. The State stipulated to the following facts related to the religious symbols displayed within MTC:

In March 2002, Appellant was terminated from the treatment program and his presumptive parole date, which had been conditioned upon his successful completion of the program, was rescinded. Appellant was then transferred to the Central Missouri Correctional Center.

The trial court heard Appellant's petition on October 10, 2002.[3] The trial court subsequently entered its Findings of Fact, Conclusions of Law, Order and Judgment denying the requested relief. Appellant brings three points on appeal from that judgment. In his first point, Appellant claims that the trial court erred in concluding that he lacked standing to challenge the presence of crosses and other religious symbols present at MTC. Appellant's second point asserts that the trial court erred in finding that the State's funding and implementation of the treatment program was permissible under the Establishment Clause, contending that requiring inmates to participate in the treatment program, "under threats of adverse effects on parole," without providing an alternative nonreligious treatment option is unconstitutional. Finally, in his third point, Appellant argues that the trial court erred in failing to secure the presence of his requested witnesses for trial and for failing to grant a continuance after it was clear his witnesses would not be available the day of trial.

### Standard of Review

■ Our standard of review in declaratory judgment cases is the same as in any other court-tried case. *Duncan v. Mo. Dep't of Corr.*, 96 S.W.3d 925, 928 (Mo. App. W.D.2003). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Gen. Motors Acceptance Corp. v. Windsor Group, Inc.*, 103 S.W.3d 794, 796 (Mo.App. E.D.2003).

### Standing

In his first point, Appellant claims that the trial court erred in concluding that he lacked standing to challenge the presence of crosses and other religious symbols present at MTC. Appellant contends that he had a legal interest in challenging the open display of these religious symbols and the expenditure of State funds to maintain those symbols "in that Appellant is a citizen of the state of Missouri, has been and will be a taxpayer and there is a prosepctive [sic] chance Appellant will be placed in MTC in the future and the public

14. The twelve steps are painted on the wall of the cafeteria at the Maryville Treatment Center.

\* \* \*

39. The Maryville Treatment Center is housed in a building that was formerly operated as a Catholic convent.
40. There are crosses located on and affixed to Buildings 2 and 3.
41. There are crosses located within and affixed to Building 3.
42. A Chi–Rho symbol is embedded into Building 3.
43. Tile mosaics depicting the stations of the cross are affixed to the walls in Building 3, Room 3B222. Room 3B222 served as the convent chapel prior to the purchase of the property by the Department of Corrections.

\* \* \*

44. The term Christus Regnat is embedded into the wall of Room 3B222.
45. Due to its size, Room 3B222 is used for encounter groups, carefrontations, graduation ceremonies, and to show videos for weekend entertainment.

3. Appellant represented himself at trial with standby counsel present.

good and interest would be best served by allowing Appellant to bring the challenge."

■ " 'Standing to sue ... exists when a party has an interest in the subject matter of the suit which gives that [party] a right to recovery, if validated.' " *Lake Arrowhead Prop. Owners Ass'n v. Bagwell*, 100 S.W.3d 840, 842 n. 4 (Mo.App. W.D.2003). "Standing is related to the doctrine which prohibits issuance by courts of advisory opinions." *Kinder v. Holden*, 92 S.W.3d 793, 803 (Mo.App. W.D.2002). "A party has standing if he or she has 'a personal stake [in the action] arising from a threatened or actual injury.' " *Thruston v. Jefferson City Sch. Dist.*, 95 S.W.3d 131, 134 (Mo.App. W.D.2003) (quoting *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986)). "In order to have standing in a declaratory judgment action, the plaintiff must have a legally protectable interest at stake." *Blue Cross & Blue Shield of Mo. v. Nixon*, 81 S.W.3d 546, 551 (Mo.App. W.D.2002). " 'A legally protectable interest means "a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, either immediate or prospective." ' " *Id.* at 552 (quoting *Gen. Motors Acceptance Corp.*, 2 S.W.3d at 839).

■ " 'Standing is a threshold requirement. Without it, a court has no power to grant the relief requested.' " *Querry v. State Highway & Transp. Comm'n*, 60 S.W.3d 630, 634 (Mo.App. W.D.2001) (quoting *In re Estate of Scott*, 913 S.W.2d 104, 105 (Mo.App. E.D.1995)). "Lack of standing cannot be waived, and we may consider it *sua sponte*." *Id.* "Appellate review of whether a litigant has standing is *de novo*." *Kinder*, 92 S.W.3d at 803. "This court determines standing as a matter of law on the basis of the petition, 'along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued.' " *Id.*

■ We first address Appellant's claim that he has standing as a taxpayer to challenge the State's actions in maintaining and continuing to display the crosses and other religious symbols at MTC. "Missouri courts allow taxpayer standing so that ordinary citizens have the ability to make their government officials conform to the dictates of the law when spending public money." *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 11 (Mo. banc 2002). "Thus, in order to establish standing ..., a Missouri taxpayer needs to show only that his or her taxes went or will go to public funds that have [been] or will be expended due to the challenged action." *Querry*, 60 S.W.3d at 634.

■ In the case at bar, however, the trial court specifically found that Appellant was not a taxpayer. In support of his argument that the trial court's finding was erroneous, Appellant cites only to a pre-trial statement he made to the court generally indicating that he had been a taxpayer and would be one in the future. Even if this unsworn statement was deemed to constitute evidence before the trial court, the trial court was certainly not required to believe it. "As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony." *McRentals, Inc. v. Barber*, 62 S.W.3d 684, 696 (Mo.App. W.D.2001). Moreover, the statement relied on by Appellant does not reflect where or when he has been a taxpayer or that he is currently a taxpayer in the State of Missouri. Accordingly, we cannot say that the trial court's finding that Appellant was not a

taxpayer was erroneous.[4]

### Mootness

 We need not address Appellant's remaining arguments on appeal because his claims that were not based on his alleged standing as a taxpayer were rendered moot by his termination from the drug treatment program and transfer to a different facility. "When an event occurs making a court's decision on an issue unnecessary, or makes the granting of effectual relief impossible, the issue is moot and should not be addressed." *Care & Treatment of Schottel v. State,* 121 S.W.3d 337, 339 (Mo.App. W.D.2003). "Even a case justiciable at its inception may be mooted by an intervening event which alters the position of the parties in such a way that any judgment rendered merely becomes a hypothetical question." *Id.* at 340. Because the justiciability of the issues in the case are implicated, we address mootness as a threshold question on appeal *sua sponte. Id.* at 339–40.

Prior to trial in this case, Appellant was terminated from the long-term drug treatment program for reasons unrelated to the claims raised in his petition, and he was transferred to a different correctional facility. The trial court specifically found that Appellant "was not terminated from the program at MTC based on his objections to or failure to participate in religious activities but due to his failure to meaningfully participate in any aspect of the program." The court concluded that Respondents "did not retaliate against [Appellant] by removing him from the treatment program at MTC" and that Appellant "was terminated from the program based on his own repeated displays of negative behaviors and attitudes." These findings by the trial court were supported by the evidence and were not against the weight of the evidence.

 In this case, Appellant sought only injunctive and declaratory relief. Issuance of an injunction is an equitable remedy. *See generally Newmark v. Vogelgesang,* 915 S.W.2d 337, 339 (Mo.App. E.D. 1996). Similarly, although a declaratory judgment action is *sui generis,* its "historical affinity is equitable and such actions are governed by equitable principles." *Preferred Physicians Mut. Mgmt. Group, Inc. v. Preferred Physicians Mut. Risk Retention Group,* 916 S.W.2d 821, 823 (Mo. App. W.D.1995). Moreover, "when equitable jurisdiction attaches, the court may determine the legal issues incident to the entire case." *Linville v. Wilson,* 628 S.W.2d 422, 425 (Mo.App. W.D.1982). "Claims for equitable relief become moot upon a prisoner's release from custody or transfer from the institution in which he suffered the conditions of confinement which formed the basis for the equitable claims." *Cooper v. Gammon,* 943 S.W.2d 699, 707 (Mo.App. W.D.1997). *See also Smith v. Hundley,* 190 F.3d 852, 855 (8th Cir.1999) (holding that an inmate's claims for declaratory and injunctive relief to improve conditions within the prison were rendered moot when he was transferred to a different facility and was no longer sub-

---

**4.** Though not mentioned in his point relied on, Appellant also argues on appeal that he should be deemed to be a taxpayer based upon his obligation under the Missouri Incarceration Reimbursement Act, §§ 217.825 through 217.841, RSMo 2000, and based on the fact that he has spent money in the inmate canteen that is used to help run the institution. While this Court need not address claims that are not fairly encompassed in an appellant's point relied on, *Mello v. Giliberto,* 73 S.W.3d 669, 672 (Mo.App. E.D.2002), we note that Appellant has failed to explain how these payments constitute a tax under the law, and furthermore, Appellant does not cite to any evidence in the record establishing that he made any such payments.

ject to those conditions); *Calhoun v. De-Tella,* 319 F.3d 936, 939 (7th Cir.2003); *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996); *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991); *McKinnon v. Talladega County, Ala.,* 745 F.2d 1360, 1363 (11th Cir.1984). As Appellant's petition requested only declaratory and/or injunctive relief, all of his non-taxpayer-based claims were rendered moot by his termination from the drug treatment program and transfer to a different facility.[5]

Since all of the remaining claims contained in Appellant's petition are moot, no justiciable controversy remains for this Court to resolve. Accordingly, we need not address the merits of Appellant's remaining claims on appeal. The judgment is reversed and remanded to the trial court with instructions to enter a new judgment dismissing Appellant's taxpayer-based claims for lack of standing and the remaining claims in his petition as moot. *See Thruston,* 95 S.W.3d at 135.

All concur.

---

**5.** In so holding, we do not mean to imply that the Department of Corrections would be able to intentionally avoid litigation with inmates merely by transferring them to different facilities. Had the trial court found, or the record established, that Appellant's transfer was the result of the problems complained of in his petition, his lawful behavior in response to those problems, or was induced by the Department's desire to avoid the litigation, a justiciable controversy might well have existed. However, as noted *supra,* the trial court made findings, which were supported by the record, that Appellant "was not terminated from the program at MTC based on his objections to or failure to participate in religious activities but due to his failure to meaningfully participate in any aspect of the program," that Respondents "did not retaliate against [Appellant] by removing him from the treatment program at MTC," and that Appellant "was terminated from the program based on his own repeated displays of negative behaviors and attitudes."