**STATE of Missouri ex rel. OUTCOM, INC., Respondent,**

v.

**CITY OF PECULIAR,
et al., Appellants.**

No. WD 73309.

Missouri Court of Appeals, Western District.

Oct. 11, 2011.

Jeffrey A. Bullins, Overland Park, KS, for appellants.

Gordon D. Gee, Kansas City, MO, for respondent.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

City of Peculiar, Missouri, Ted Turner and Charlie Mohr [1] (hereinafter, collectively, "the City") appeal from the trial court's grant of summary judgment in favor of Outcom, Inc. ("Outcom") ordering that a preliminary writ of mandamus directing

---

1. At all times pertinent to this proceeding Ted Turner was the Mayor of the City of Peculiar, and Charles Mohr was the Building Inspector for the City of Peculiar.

the City to issue a sign permit to Outcom be made absolute. The City contends that the trial court erred as a matter of law because Outcom failed to obtain a special use permit to erect an outdoor advertising sign though required to do so by section 420.130 of the Peculiar Municipal Code ("the Code")[2]. We agree with the City and reverse.

### Factual and Procedural History

The material facts are undisputed. On May 3, 2006, at the request of Outcom, the City Building Inspector, Charles Mohr ("Mohr") provided Outcom the forms necessary to obtain permits to erect two outdoor advertising signs/billboards on property owned by Branaman Realty, LLC and located along the south side of U.S. 71 Highway in an area zoned M–1, light industrial. The forms were entitled "Application for Special Use Permit."

On May 26, 2006, Outcom submitted two applications for special use permits to the City along with checks for the $100 fee for each application, with attached easement agreements, legal descriptions of the easement property, and zoning documentation.[3]

On June 2, 2006, Steven Hutfles ("Hutfles"), an assistant to the City Administrator, refused to accept Outcom's completed applications for special use permits. Hutfles told Outcom that the Code did not require special use permits for outdoor advertising signs. Hutfles gave Outcom different application forms entitled "Sign Permit." At Outcom's request, Hutfles provided Outcom with a letter which stated:

This letter is to confirm that you have taken a good faith effort to submit an application for the placement of two billboards located on the property of Branaman Cabinets, Inc., as describe [sic] in the legal description attached as Exhibit A. I herby [sic] acknowledge that at 2:36 p.m. on Friday, June 2, 2006 that you tried to submit what you thought was the proper application for the billboard permit. I also acknowledge that the location describe [sic] above will have the right of first selection.

The purpose of the letter was to secure Outcom's priority over applications submitted by others, such that Outcom's later submission of the sign permit applications would relate back to the date Outcom tried to submit the applications for special use permit.

Outcom took no action to seek review of, or redress from, Hutfles's refusal to accept its special use permit applications.

On June 6, 2006, Outcom submitted two applications for sign permits along with the required application fee and accompanying documents. On June 29, 2006, Outcom withdrew one of its sign permit applications. On June 29, 2006, in accordance with the Missouri Billboard Act,[4] the Missouri Highway and Transportation Commission issued Outcom an Outdoor Advertising Permit for the sign location which was the subject of the remaining application for sign permit.

On July 3, 2006, Hutfles sent Outcom an e-mail advising that a special use permit *was* required to be obtained for the out-

---

**2.** All references to the Code are to the version of the Code in effect as of June 6, 2006, unless otherwise expressly indicated.

**3.** Presumably, the fee and materials accompanying the special use permit applications are required by the Code. The provisions of the

Code describing the procedure to follow to secure the issuance of a special use permit are not a part of the record.

**4.** Section 226.500 et seq., RSMo 2000, as supplemented through 2006.

door advertising sign.[5] On August 17, 2006, Outcom wrote Hutfles and advised that it did not believe the Code required a special use permit for an outdoor advertising sign, and demanded the City issue the sign permit requested by its pending application. On August 24, 2006, the City wrote Outcom and advised that the clear language of section 420.130 of the Code prohibits outdoor advertising signs except when a special use permit has been obtained, and that the City could not, as a result, issue the requested sign permit. Outcom did not thereafter re-submit the application for special use permit it had first attempted to submit on May 26, 2006, for the sign which was the subject of its June 6, 2006 application for sign permit.

On October 3, 2006, by Ordinance No. 100306, the City adopted a revised version of section 420.100 of Chapter 420 of its Code relating to billboards or advertising signs.

On November 12, 2006, Mohr denied Outcom's June 6, 2006 sign permit application. The City did not apply the amended version of Chapter 420 to Outcom's June 6, 2006 sign permit application, but continued to take the position that section 420.130 of the Code in existence at the time Outcom filed its sign permit application required Outcom to secure, in addition to the sign permit, a special use permit for the pro-

posed outdoor advertising sign. The City concedes that the only deficiency in Outcom's June 6, 2006 sign permit application was Outcom's failure to seek and secure a special use permit for the proposed sign.

On December 12, 2006, Outcom appealed the denial of its June 6, 2006 sign permit application to the City's Board of Zoning Adjustments ("BZA").[6] On May 23, 2007, after a public hearing, the BZA denied Outcom's request for relief.[7]

On September 27, 2006, Outcom filed a petition for writ of mandamus (the "Mandamus Action"), assigned case number 06CA–CV02984, which sought to require the City to issue a sign permit in response to the June 6, 2006 sign permit application.[8] A preliminary writ of mandamus was summarily issued on September 28, 2006. The City filed a motion to dismiss the preliminary writ of mandamus, arguing that it did not have a ministerial duty to issue a sign permit to Outcom because of Outcom's failure to secure a special use permit as required by section 420.130 of the Code.

On June 25, 2007, Outcom filed a second lawsuit, a petition for writ of certiorari, (the "Certiorari Action"), assigned case number 07CA–CV02248, which also sought judicial review of the BZA's denial of the

**5.** The e-mail did not explain why Hutfles had earlier advised Outcom that special use permits were not required for outdoor advertising signs.

**6.** Outcom had submitted a second sign permit application for another proposed sign location on October 3, 2006. That sign permit application was denied on October 20, 2006. Outcom appealed the denial of this second sign permit application to the BZA on November 8, 2006. Outcom's appeal to the BZA of the City's denial of its June 6, 2006 sign permit application was consolidated with Outcom's appeal to the BZA of the City's

denial of the October 3, 2006 sign permit application.

**7.** Though it is not entirely clear from the record, we presume the BZA denied Outcom's requested relief both as to the June 6, 2006 sign permit application and the October 3, 2006 sign permit application.

**8.** The subject of the Mandamus Action was limited to the BZA's denial of the June 6, 2006 sign permit application and did not seek relief from the BZA's presumed denial of the October 3, 2006 sign permit application.

June 6, 2006 sign permit application.[9]

On September 11, 2008, the Mandamus Action was consolidated with the Certiorari Action.[10] On September 11, 2009, Outcom filed a motion for summary judgment in connection with the Mandamus Action. On November 19, 2010, the trial court granted summary judgment in favor of Outcom and made the preliminary writ of mandamus absolute ("Judgment"). The Judgment is reflected as an entry on the consolidated docket sheet, and thus appears as a final disposition of the consolidated cases.

The City appeals.

### Finality of Judgment

■■■ "The appellate court has jurisdiction only over final judgments. For a judgment to be final and appealable, it must dispose of all issues and all parties in the case and leave nothing for future determination." *In re Estate of Hoskins*, 996 S.W.2d 792, 793 (Mo.App. E.D.1999).

Neither party challenges the finality, and thus the appealability, of the Judgment. We note, however, as did the trial court in its Judgment, that Outcom did not seek summary judgment in the Certiorari Action, and that the City did not file its own motions for summary judgment in either the Mandamus Action or the Certiorari Action. The trial court thus accurately observed that the only subject technically before it was Outcom's request for the relief sought in the Mandamus Action. We must consider whether all of the issues between the parties in both the Mandamus Action and the Certiorari Actions were resolved by the Judgment such that this matter is properly before this court.

Our determination is difficult due to the fact that other than the docket sheet, no pleadings from the Certiorari Action have been submitted as a part of the record on appeal. However, the City asserts in the jurisdictional statement of its brief that:

[T]he judgment disposes of the merits of all issues affecting the parties. By filing the [Judgment], the district [sic] court disposed of the issues raised not only by [Outcom's] *Petition for Writ of Mandamus* in Case No. 06CA–CV02984, but also of [Outcom's] *Petition for Writ of Certiorari* in Case No. 07CA–CV02248. Although neither the City of Peculiar nor [Outcom] ever specifically sought summary judgment on the *Petition for Writ of Certiorari*, that petition sought the same relief—to compel the City of Peculiar to issue [Outcom] an outdoor advertising sign permit. Therefore, by virtue of disposition of Case No. 06CA–CV02984, judgment is implicitly final as to the *Petition for Writ of Certiorari* as well.

Outcom did not include a jurisdictional statement in its brief, which suggests, as is anticipated by Rule 84.04(f), that Outcom was not "dissatisfied with the accuracy or completeness of the jurisdictional statement" in the City's brief. We thus conclude that Outcom agrees with the City's representation that the relief Outcom sought in the Mandamus Action and in the Certiorari Action were the same—a directive that the City issue a sign permit to Outcom as requested by its June 6, 2006 sign permit application. Outcom has not suggested in its brief that discreet legal issues remain pending in the Certiorari Action which would warrant remand for further proceedings should this Court disagree with the trial court's decision to

9. The record offers no explanation for Outcom's filing of a second suit against the City.

10. Thereafter, all docket entries in the case appear on the docket sheet for Case No. 07CA–CV02248.

make the preliminary writ of mandamus secured in the Mandamus Action absolute. Thus, it appears uncontested that although Outcom's motion for summary judgment was technically filed in the Mandamus Action, the Judgment by necessary implication and effect resolved all issues between the parties in both the Mandamus Action and the Certiorari Action as the relief sought in both cases was essentially the same. We conclude, therefore, that the Judgment (which is so designated, which reflects the case numbers for both the Mandamus Action and the Certiorari Action, and which was entered as a judgment disposing of both actions on the consolidated docket sheet) is, in fact, a final judgment for purposes of appeal.

### Standard of Review

" 'When considering appeals from summary judgments, [we] will review the record in the light most favorable to the party against whom judgment was entered.' " *State ex rel. Ad Trend, Inc. v. City of Platte City*, 272 S.W.3d 201, 203 (Mo.App. W.D.2008) (quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). " 'Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety

of sustaining the motion initially.' " *Id.* "The fact that it was a summary judgment in a writ of mandamus action does not affect our standard of review." *State ex rel. City of Desloge v. St. Francois Cnty.*, 245 S.W.3d 855, 859 (Mo.App. E.D.2007) (citing *McDonald v. City of Brentwood*, 66 S.W.3d 46, 50 (Mo.App. E.D.2001) (applying de novo review to appeal of summary judgment in mandamus action)). "Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Rule 74.04(c)(6)).

### Analysis

The issuance of a permit is a ministerial act, not a discretionary one, which may be refused if the requirements of the applicable ordinance have not been met. *State ex rel. Kugler v. Maryland Heights*, 817 S.W.2d 931, 933 (Mo.App. E.D.1991). Here, the facts are undisputed. The June 6, 2006 sign permit application was denied *solely* on the basis that Outcom had not obtained a special use permit. Outcom did not re-apply for a special use permit,[11] even though it was told by the City that the June 6, 2006 sign permit application would be denied unless Outcom sought and secured a special use permit for the proposed sign. Thus, the

---

11. Outcom initially attempted to apply for a special use permit for its proposed sign, though the special use permit application was refused by Hutfles. There is no dispute that as a result, Outcom did not have a special use permit application for its proposed sign pending at the time the City took up and denied the June 6, 2006 sign permit application. Outcom was on notice before its June 6, 2006 sign permit application was denied that the City believed section 420.130 of its Code required an application for special use permit to accompany the application for sign permit. Though Outcom was given inconsistent instructions from Mohr and Hutfles, at least initially, about the need for a special use permit, Outcom has not argued that the City was thus estopped to deny the June 6, 2006 sign permit application. Once Outcom was advised that the City did, indeed, construe the Code to require a special use permit application to accompany a sign permit application for outdoor advertising signs, Outcom gambled by taking the position that the Code could not be so read-and thus ran the risk that its decision not to resubmit its special use permit application could result in the City's warranted denial of its sign permit application.

only question before us is whether the Code in effect at the time Outcom filed the June 6, 2006 sign permit application [12] required Outcom to obtain a special use permit, an issue of statutory interpretation, and thus a pure question of law.

The primary rule of statutory construction is to ascertain the intent of the lawmakers by construing words used in the statute in their plain and ordinary meaning. Where the language is clear and unambiguous, there is no room for construction. It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect. Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute.

*Hyde Park Hous. P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993) (internal citations omitted). "When construing a city ordinance, the general rules of statutory construction apply." *Moynihan v. Gunn*, 204 S.W.3d 230, 234 (Mo. App. E.D.2006). Where the language of the ordinance is clear and unambiguous, no statutory construction is needed, as a court should merely give effect to the ordinance as it is written. *Cousin's Adver., Inc. v. Bd. of Zoning Adjustment of Kansas City*, 78 S.W.3d 774, 779 (Mo.App. W.D.2002). "Where a provision's language is clear, courts must give effect to its plain meaning and refrain from applying rules of construction unless there is some ambiguity." *Moynihan*, 204 S.W.3d at 234. We may not create an ambiguity where the words of the ordinance are plain. *Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust*, 304 S.W.3d 112, 117 (Mo. banc 2010).

Chapter 420 of the Code is entitled "Sign Regulations." Chapter 420.010 defines "sign" as:

[E]very sign, name, number, identification, description, announcement, declaration, demonstration, device, display, flag, banner, pennant, illustration, beacon, light, or insignia and structure supporting any of the same, affixed directly or indirectly to or upon any building, or outdoor structure, or erected or maintained upon a piece of land and which directs attention to an object, product, service, place, activity, person, institution, organization or business.

Chapter 420 thus regulates all signs in the City, including, but not limited to, outdoor advertising signs and billboards.

Section 420.040 provides that "[e]xcept as otherwise provided in this Chapter, no sign shall hereafter be erected, construed or altered except as provided by this Chapter, *and* until a permit for same has been issued by the Building Inspector." (Emphasis added.) Thus, as to all signs in the City, a sign permit is required, and the sign must otherwise comply with all other provisions of Chapter 420.

Section 420.050, entitled "Application for Sign Permits," specifies the procedure for securing a sign permit:

A. Application for permits shall be made on forms as provided by the City of Peculiar. The permit application shall be signed by the applicant and when the applicant is any person other than the owner of the property, the permit application shall also be signed by the owner of the property, or his agent or lessee, and shall contain the location of the sign structure, the name and ad-

12. Neither party has argued that the October 3, 2006 amendment of section 420.100 of the Peculiar Code applied to the June 6, 2006 application, notwithstanding the fact the application was not taken up by the City until November 12, 2006. We express no opinion, therefore, on this subject.

dress of the sign owner and of the sign erector, drawings showing the design, dimensions and locations of the sign and such other pertinent information as the Building Inspector may require to insure compliance with the laws of Peculiar.

B. ... *If, upon application, it shall appear that the proposed structure is in compliance with all requirements of this Chapter, the Building Code and all other laws and ordinances of the City of Peculiar,* the Building Inspector shall then issue the permit.... In the event the Building Inspector denies the application, the reasons for denial shall be forwarded to the applicant in written form and signed by the Building Inspector.

(Emphasis added.) Pursuant to the clear and unambiguous language of section 420.050(A), every proposed sign (including, but not limited to, outdoor advertising signs and billboards), requires an application for sign permit along with the specified accompanying documents. Pursuant to the clear and unambiguous language of section 420.050(B), the Building Inspector is only required to issue a sign permit if, in addition to the submission of an application as required by section 420.050(A), "it shall appear that the proposed structure is in compliance" with Chapter 420 and all applicable laws. Thus, the Building Inspector's ministerial duty to issue a sign permit pursuant to section 420.050 is not activated *unless* an applicant submits an application for sign permit that conforms to section 420.050(A) *and* the proposed sign is in conformance with the law, including other applicable provisions of Chapter 420.

Here, it is uncontested that Outcom submitted an application for sign permit that was in conformance with Section 420.050(A). It is also uncontested that Outcom's proposed sign was compliant with Chapter 420, and all other laws or ordinances of the City, except with respect to the City's claim that the proposed sign did not comply with section 420.130.[13] We must determine, therefore, whether Outcom was required to comply with section 420.130 in connection with its June 6, 2006 sign permit application. If Outcom was so required, then the City did not have a ministerial duty to issue a sign permit in response to the June 6, 2006 sign permit application.

Section 420.130 is entitled "Prohibited Signs," and provides in pertinent part:

The following signs are prohibited (in all districts) and shall be removed in accordance with Section 515.180, 'Removal'.

1. Outdoor advertising (poster panels, billboards and off-site promotional signs), *except where a special use permit has been obtained* for such sign.

(Emphasis added). There is no meaning which can be attributed to section 420.130.1 of the Code other than the clear and unambiguous requirement that a special use permit must be obtained for outdoor advertising signs. Because section 420.130.1 is clear and unambiguous, it is not subject to construction, and we are obligated to give effect to its plain meaning. Outcom was thus required to obtain a special use permit for the proposed outdoor advertising sign which was the subject of its June 6, 2006 sign permit application. Because Outcom failed to do so, the

---

13. Section 420.100, entitled "Billboard or Advertising Signs," restricts advertising signs to certain highway corridors so long as suitably zoned, and subjects said signs to specified setback restrictions and regulations. Outcom's proposed sign complied with the requirements of section 420.100. Outcom had also secured the State's approval for the sign as required by the Missouri Billboard Act.

proposed sign did not comply with Chapter 420, and, pursuant to section 420.100(B), the City's Building Inspector was neither authorized nor obligated to issue a sign permit.

 Outcom argues that the City's amendment of the Code on October 3, 2006, to repeal and replace section 420.100 to more clearly specify an applicant's obligation to secure a special use permit for outdoor advertising signs is evidence that a special use permit was either not required under the pre-amendment version of the Code, or that the Code was ambiguous on this point. It is true that "[w]hen the legislature has altered an existing statute such change is deemed to have an intended effect, and the legislature will not be charged with having done a meaningless act." *State ex rel. Dir. of Revenue v. Gaertner,* 32 S.W.3d 564, 567 (Mo. banc 2000) (citation omitted). However, a simple comparison of Chapter 420 before and after the October 3, 2006 amendment reveals that the City made several changes to its regulations with respect to outdoor advertising and billboards. We cannot, therefore, presume, as Outcom suggests, that the City's amendment of Chapter 420 was precipitated by the desire to add what had theretofore been a non-existent requirement—the need to secure a special use permit. Even if the City was motivated, in part, to adopt the amendment to Chapter 420 to makes its regulations for outdoor advertising signs and billboards clearer, that does not compel us to conclude that the Code prior to the amendment was ambiguous. *See Andresen v. Bd. of Regents of Mo. W. Coll.,* 58 S.W.3d 581, 589 (Mo.App. W.D.2001) ("While an amendment to a statute must be deemed to have been intended to accomplish some purpose, that purpose can be clarification rather than a change in existing law."); *Flipps Nine, Inc. v. Missouri Property and Cas. Ins. Guar. Ass'n,* 941 S.W.2d 564,

568 (Mo.App. E.D.1997) (held it was not implicit in the enactment of new statute which specifically excluded coverage of claims of certain nonresidents that claims of nonresidents were previously covered; enactment intended only to clarify and particularize existing law). In fact, we have concluded that there is a clear and unambiguous interplay between section 420.050(B) (which clearly and expressly requires an applicant for a sign permit to comport with the entirety of Chapter 420) and section 420.130 (which clearly and expressly requires that a special use permit be secured for all outdoor advertising signs). We will not search for reasons to find an ambiguity where the words of an ordinance are plain. *Orla Holman Cemetery, Inc.,* 304 S.W.3d at 117.

The trial court committed error as a matter of law when it granted summary judgment in favor of Outcom and made the preliminary writ of mandamus absolute.

### Conclusion

We reverse the trial court's Judgment. The preliminary writ of mandamus made absolute by that Judgment is quashed.

All concur.