

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FIVE**

| | | |
|---|---|---|
| ERNESTINE RENCHER, Plaintiff, and | ) | No. ED100155 |
| BENJAMIN PHILLIPS, HAROLD | ) | |
| MINOR, DANIEL C. PARSONS AND | ) | |
| HERMAN CANAMORE, JR., | ) | Appeal from the Circuit Court |
| | ) | of City of St. Louis |
| Respondents/Cross-Appellants, | ) | |
| | ) | |
| vs. | ) | Hon. Joan L. Moriarty |
| | ) | |
| TISHAURA JONES, | ) | |
| | ) | |
| Appellant/Cross-Respondent. | ) | Filed: May 20, 2014 |

Before Robert M. Clayton III, C.J., Robert G. Dowd, Jr., J. and James E. Welsh, Sp.J.

PER CURIAM

Tishaura Jones, in her capacity as Treasurer of the City of St. Louis

("Treasurer")[1] appeals the judgment of the trial court in favor of Daniel Parsons,

Benjamin Phillips, Harold Minor, and Herman Canamore (collectively "Plaintiffs") on

the liability portion of their petition for declaratory judgment. Plaintiffs cross-appeal the

judgment of the trial court granting summary judgment in favor of Treasurer on the issue

of damages. We affirm in part and reverse and remand in part.

---

[1] The action was initially filed against Larry C. Williams, in his capacity as Treasurer of the City of St. Louis. The title of the action was amended to name Jones as a party as Williams' lawful successor.

## I.        BACKGROUND

Pursuant to Section 82.485.1 RSMo (2000),[2] Treasurer is the supervisor of parking meters for the City of St. Louis.  The St. Louis City Revised Code, Section 17.62.230 (1990), requires Treasurer to establish a Parking Meter Division ("PMD"), which is responsible for a number of duties relating to parking meters in the City of St. Louis.  Plaintiffs[3] were employees of the PMD, and their employment was terminated when Treasurer outsourced certain duties of the PMD to a private contractor.  Plaintiffs filed a petition for declaratory judgment and for damages, asking that their termination be declared unlawful and that Treasurer's outsourcing of PMD functions was contrary to law.  At Plaintiffs' request, the trial court bifurcated the issues of liability and damages.

Following trial on the issue of liability, the court determined Treasurer's outsourcing of the PMD's duties violated both Section 82.485, and St. Louis City Code Section 17.62.230.  However, in light of the fact Plaintiffs were at-will employees, the trial court granted summary judgment in favor of Treasurer on Plaintiffs' claim for damages.  The trial court found Plaintiffs could not prove their termination was a violation of public policy, and therefore their claim for damages failed as a matter of law. Treasurer now appeals the court's finding that the outsourcing of the duties of the PMD was unlawful.  Plaintiffs cross-appeal the trial court's grant of summary judgment in favor of Treasurer on the issue of damages.

---

[2] All further statutory references are to RSMo (2000).
[3] Several additional plaintiffs were named in the original petition for declaratory judgment and damages; however, they were no longer parties at the time of trial.  Several plaintiffs voluntarily dismissed their actions, and one plaintiff died while the action was pending without any substitution of another party.

## II. DISCUSSION

### A. Standard of Review

Our review of a trial court's judgment in a court-tried declaratory judgment action is the same as in any other court-tried case. *Inman v. Missouri Dept. of Corrections*, 139 S.W.3d 180, 183 (Mo. App. W.D. 2004). We will affirm the trial court's judgment if it is supported by substantial evidence, and it is not against the weight of the evidence. *Id*. In addition, we will affirm the judgment unless the trial court erroneously declares or applies the law. *Id*.

### B. Parking Meter Division

In each of her two points on appeal, Treasurer claims the trial court erred in entering judgment in favor of Plaintiffs, declaring Treasurer's actions in outsourcing duties of the PMD to a private contractor. In her first point, Treasurer argues the trial court misinterpreted St. Louis City Code Section 17.62.230 and Section 82.485. In her second point, Treasurer contends the trial court's finding that Treasurer did not maintain a PMD in accordance with St. Louis City Code and State law was against the weight of the evidence. In the interest of clarity, we address both points together.

As previously discussed, Section 82.485.1 states Treasurer is the supervisor of parking meters. Section 82.485.3 requires Treasurer, as supervisor of parking meters, to establish and maintain a parking meter fund. St. Louis City Code Section 17.62.230 ("the ordinance") further requires Treasurer to establish a Parking Meter Division. The ordinance also provides that "[Treasurer] shall appoint such personnel as are necessary for the performance of said duties and as are provided for in the budget approved as described in Section 17.62.220." Pursuant to the ordinance, the salaries of the appointees

are to be fixed by ordinance, and the "salaries and expenses" are to be paid from the parking meter fund and not the general revenue of the City.

In the present case, the trial court interpreted the language of the ordinance and Section 82.485 to require that parking meter functions be performed only by employees of the PMD appointed by Treasurer. Although the court agreed Treasurer had the "authority to enter into contracts, including public-private parking ventures," the court found Treasurer's outsourcing of duties to a private contractor in the present case effectively eliminated the PMD, in violation of Section 82.485. We disagree.

The primary rule of statutory construction is to determine the lawmakers' intent from the plain and ordinary language in the ordinance. *State ex rel. Outcom, Inc. v. City of Peculiar*, 350 S.W.3d 57, 63 (Mo. App. W.D. 2011) (quoting *Hyde Park Hous. P'ship v. Dir. Of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993)). We follow the same rules of statutory construction when interpreting a city ordinance. *City of Columbia v. Henderson*, 399 S.W.3d 493, 495 (Mo. App. W.D. 2013) (internal citation omitted). Thus, to determine the intent of a municipal legislative body, we look to the plain and ordinary meaning of the language used in the ordinance. *City of Columbia*, 399 S.W.3d at 495.

Here, although the plain language of Section 82.485.2[4] and the ordinance required Treasurer to establish a Parking Meter Division, the ordinance also grants Treasurer discretion in staffing the PMD by appointing "such personnel as are necessary" to perform the duties of the PMD. The court found the language in the ordinance "clearly contemplates that parking meter functions are to be performed by employees of the

---

[4] Section 82.485.2 was amended in 2013 to eliminate the requirement to establish both a parking enforcement division and a parking meter division. The provision now requires Treasurer, as supervisor of parking meters, only to establish and supervise a "parking division" for enforcement purposes.

4

Parking Meter Division appointed by the Treasurer . . . ." However, the trial court's interpretation is inconsistent with the plain language of the ordinance.

We can presume the legislative body intended each word and clause to have effect. *State ex rel. Outcom, Inc.*, 350 S.W.3d at 63. We can also presume the lawmakers did not include superfluous language in the ordinance. *Id*. Provisions not plainly written in the ordinance or necessarily implied from what is contained therein should not be added by a court under the guise of construction. *Anani v. Griep*, 406 S.W.3d 479, 482 (Mo. App. E.D. 2013) (quoting *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 143 (Mo. banc 1980)). Here, the language of the ordinance does not specifically limit staffing of any and all parking meter duties with only appointed employees of the PMD. The lawmakers could have used such plain language, but chose not to do so. Instead, the ordinance allows Treasurer discretion to appoint "such personnel as are necessary" to perform the duties of the PMD. Because Treasurer chose to outsource PMD duties to a private contractor, fewer "personnel" were necessary to perform those duties.

In addition, we review statutory provisions relating to the same subject matter and construe them together to determine legislative intent. *Crawford v. Div. of Emp. Sec.*, 376 S.W.3d 658, 664 (Mo. banc 2012). We attempt to read the provisions consistently and harmoniously. *Id*. Section 82.487.2(1) allows for Treasurer to "[e]stablish joint public-private parking ventures." St. Louis City Revised Code, Section 17.62.070 (1990) also authorizes Treasurer to "enter into and make disbursements on contracts for the purchase, installation and maintenance of parking meters, parking permit devices and other parking control systems in designated parking meter zones, parking permit zones

5

and other parking areas, and any other purposes deemed necessary by [Treasurer] to effectively control public parking." These provisions, when read together with the language of the ordinance giving Treasurer discretion to "appoint such personnel as are necessary for the performance" of the parking meter duties, evidence an intent to allow Treasurer to outsource duties to private contractors.

As previously noted, the trial court acknowledged Treasurer's authority to enter into contracts, "including public-private parking ventures." However, the trial court found in choosing to outsource the PMD duties, Treasurer "effectively eliminated" the PMD in violation of Section 82.485.2 and the ordinance.

Section 82.485.2 states, in relevant part, it shall be Treasurer's duty to "establish and supervise . . . a parking meter division to enforce any statute or ordinances now or hereafter established pertaining to the parking of motor vehicles, including automated zone parking and all other parking functions, and to make all disbursements on any parking contracts, including employment, consulting, legal services, capital improvement and purchase of equipment and real property which may hereafter be made . . . ." In addition to State statute, Section 17.62.230 of the St. Louis City Revised Code also requires Treasurer to "establish as a part of his department a Parking Meter Division, which shall be responsible for the duties set forth in Chapter 17.62 of the Revised Code of the City of St. Louis, the development and enforcement of policies and procedures relating to this chapter, and any other functions necessary to carry out the duties set forth therein."

As Treasurer notes, there was evidence presented at trial that employees remained in the PMD and performed duties therein. Exhibit 1, an organizational chart of the

6

parking division admitted at trial, enumerates several employees under the supervision of both Treasurer, and Thomas Stoff, the assistant treasurer for parking services operations. Stoff testified at trial regarding the organizational chart. He noted that Roy White, as supervisor of communications and risk manager, had responsibilities within the PMD. Exhibit 1 lists those duties as "[o]verse equipment; risk management; accident investigations; maintenance of vehicles . . . ." Stoff elaborated on those duties, explaining that White was responsible for ensuring the communications process to the dispatching operation functioned properly, and White also performed accident investigations with respect to both parking meter operations as well as parking enforcement. White worked with risk management to evaluate potential ways to avoid accidents, and he was also in charge of supervising maintenance and repair of vehicles used for parking meter functions.

James Rogers and Cornelius Osby were listed on Exhibit 1 under the training and professional standards heading. Exhibit 1 lists their PMD duties as: "[c]itizen complaints and relations; monitors collection and booting crews and repairs; monitor condition of meters; monitors collections schedule; monitor maintenance compliance . . . ." The duties further included a bi-weekly meeting with Stoff and White, as well as representatives from the private company performing the outsourced duties to address contract compliance or other issues of concern. Stoff testified Rogers and Osby monitored the collection and enforcement crews while they performed their duties, and they assisted in responding to citizen complaints concerning parking meters.

The trial court noted Exhibit 1 does not specifically include a "Parking Meter Division," but only refers to the PMD in the footnoted descriptions of the PMD duties for

7

White, Rogers, and Osby. The court concluded these employees were simply monitoring collection activity in addition to their primary duties elsewhere within the parking division. However, in light of both Exhibit 1 and Stoff's testimony at trial discussed above, the trial court's conclusion that the PMD was "effectively eliminated" was against the weight of the evidence.

As previously discussed, Treasurer had the authority by the plain language of State statutes as well as provisions of the St. Louis City Revised Code to outsource certain functions of the PMD to a private contractor, while still retaining necessary personnel in supervisory positions within the PMD. Therefore, the trial court erred in finding Treasurer violated the law by outsourcing duties of the PMD. Points one and two on appeal are granted.

## C.    Damages

In their sole point on cross-appeal, Plaintiffs claim the trial court erred in granting summary judgment in favor of Treasurer on Plaintiffs' claims for damages. Plaintiffs contend they were entitled to relief because they were terminated by Treasurer's unlawful actions, and therefore they were terminated in violation of public policy. Plaintiffs' argument is without merit.

Following the bifurcation of the issues of liability and damages in this case, the trial court subsequently granted summary judgment in favor of Treasurer on Plaintiffs' claim for damages. The court reasoned that Plaintiffs were at-will employees, and Treasurer's challenged action did not fall within the public policy exception to the general rule that at-will employees may be terminated for any reason or for no reason at all. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 91 (Mo. banc 2010).

8

The Missouri Supreme Court in *Fleshner* expressly adopted a public-policy exception to the at-will employment doctrine. *Id*. at 92, *See also Margiotta v. Christian Hosp. Northeast Northwest*, 315 S.W.3d 342 (Mo. banc 2010) (applying public-policy exception set forth in *Fleshner*). The Court stated an at-will employee may not be terminated "(1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Id*. As the trial court correctly noted, the public-policy exception did not apply in the present case, where there was no claim Plaintiffs were terminated for refusing to perform an illegal act or because they reported wrongdoing or a violation of the law to their superiors or third parties.[5] Plaintiffs were not entitled to compensatory damages for their declaratory judgment claims, and as at-will employees absent any exception to the doctrine, Plaintiffs could be terminated for any reason or no reason at all. Therefore, the trial court did not err in granting summary judgment in favor of Treasurer on Plaintiffs' claims for damages.

## III.    CONCLUSION

The trial court's judgment granting summary judgment in favor of Treasurer on Plaintiffs' claims for damages is affirmed. The judgment finding Treasurer violated St. Louis City Code and State law is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

[5] In their cross-appeal, Plaintiffs argue the public-policy exception should be expanded to apply to the particular circumstances of the present case; however, we decline to do so, particularly in light of our conclusion that Treasurer did not violate St. Louis City Code or State law. In addition, Plaintiffs contend Missouri law provides that public employees who have been unlawfully terminated are entitled to damages. The trial court properly considered and rejected these arguments.