

# SUPREME COURT OF MISSOURI
## en banc

|  |  |  |
|---|---|---|
| ERIC WILLIAMS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC93853 |
| | ) | |
| WILLIAM L. HUBBARD, LIMITED | ) | |
| ADMINISTRATOR AD LITEM | ) | |
| OF THE ESTATE OF | ) | |
| BETTY MARGARET REYNOLDS AND | ) | |
| KENNETH NELSON AND | ) | |
| SANDRA K. NELSON, | ) | |
| HUSBAND AND WIFE, | ) | |
| | ) | |
| Respondents. | ) | |

APPEAL FROM CIRCUIT COURT OF JACKSON COUNTY
The Honorable Kathleen A. Forsyth, Judge

*Opinion issued February 3, 2015*

Eric Williams sued attorney Kenneth Nelson and his wife, Sandra Nelson. He alleges they violated their fiduciary duties to Betty Reynolds by unduly influencing her to give Sandra joint ownership of (or to designate Sandra as the "payable on death" or POD beneficiary for) most of Reynolds' assets. The trial court granted summary judgment in favor of the Nelsons on the ground that Williams did not have standing to bring these claims because "the undisputed facts demonstrated show that [Williams] has suffered no harm and has no right to any of the assets at issue." This judgment is affirmed in part and vacated in part, and the matter is remanded.

**Background**

In 2000, Reynolds retained Kenneth Nelson to advise her in achieving her estate planning objectives. She requested that Kenneth draft a beneficiary deed transferring certain real property upon her death to Williams, Reynolds' second cousin. She executed that deed in March 2000. Reynolds also asked Kenneth to draft a will naming Williams, together with her friends Norma Lamp (mother of Sandra Nelson) and Erma Louise Baughman, as her beneficiaries. She executed that will in May 2000.

In 2006, Reynolds wrote a letter to Kenneth instructing him to prepare a durable power of attorney naming Sandra as Reynolds' attorney-in-fact. She also wanted Kenneth to change her will to remove Lamp and Baughman as beneficiaries and name Sandra in their stead. Finally, Reynolds wanted Sandra to be her personal representative. Reynolds signed the power of attorney and the new will in 2006.

Reynolds made no further changes to her will before she died on April 28, 2010. At that time, however, her will was of little practical significance because she had few assets that became part of her probate estate. Instead, most of Reynolds' personal property consisted of bank accounts that passed directly to Sandra, either by virtue of Sandra being a joint owner (with right of survivorship) or because Reynolds had designated Sandra as the "payable on death" ("POD") beneficiary on those accounts.

When Reynolds first approached Kenneth in 2000 for estate planning advice, Kenneth had her fill out a questionnaire identifying her assets. Reynolds listed four bank accounts (one with Bank of America and three with the Kansas City Police Credit Union ("KCPCU")) and three brokerage accounts (one with AARP Scudder and two with

American Century). Reynolds noted that she owned one of the accounts jointly with Lamp and that she either owned the other six accounts jointly with Baughman or had designated Baughman as the POD beneficiary on those accounts.

Between the time she filled out Kenneth's questionnaire in 2000 and her death in 2010, Reynolds closed four of these seven accounts (i.e., the Bank of America account, two of the three KCPCU bank accounts, and the AARP Scudder brokerage account). The remaining three accounts (i.e., one KCPCU bank account and the two American Century brokerage accounts) remained open until her death, but with significant changes. On July 10, 2006, Reynolds revoked Baughman's POD beneficiary designation on the KCPCU account and instead gave Sandra joint ownership of that account with the right of survivorship.[1] Similarly, on April 29, 2008, Reynolds terminated Baughman's joint ownership interests in the two American Century accounts and made Sandra the joint owner of these accounts.

Reynolds also opened a new checking account at United Missouri Bank ("UMB"). She originally designated Baughman as the POD beneficiary but, on July 20, 2006, Reynolds revoked Baughman's POD beneficiary designation and made Sandra a joint owner with the right of survivorship. In 2008, Reynolds purchased two certificates of deposit ("CDs") at UMB and made Sandra a joint owner of these deposits with

---

[1] This KCPCU account, which had contained deposits, CDs, and IRAs totaling $200,859 in April 2000, contained only two IRAs totaling approximately $60,000 in 2010 when Reynolds died.

3

survivorship rights.[2]  Finally, in 2009, Reynolds purchased a third CD at UMB.  Instead of making Sandra a joint owner of this CD as she had the previous two, Reynolds designated Sandra as the POD beneficiary for this asset.

As summarized in the following table, Reynolds' estate planning decisions from 2006 until her death in 2010 were: (1) to replace Baughman (as her POD beneficiary) with Sandra (as her joint owner) on all three of the accounts which remained from the seven accounts Reynolds owned in 2000; (2) to replace Baughman (as her POD beneficiary) with Sandra (as her joint owner) on the new UMB checking account; and (3) to make Sandra the first and only joint owner of, or her first and only POD beneficiary on, the three new CDs from UMB.

| Account | Final Balance | Final Beneficiary *(type)* | Previous Beneficiary *(type)* |
|---|---|---|---|
| Bank of America | *closed* | *n/a* | Baughman *(unknown)* |
| KCPCU #1 | *closed* | *n/a* | Baughman *(POD)* |
| KCPCU #2 | *closed* | *n/a* | Lamp *(joint owner)* |
| KCPCU #3 | $61,467.25 | Sandra *(joint owner)* | Baughman *(POD)* |
| AARP - Scudder | *closed* | *n/a* | Baughman *(joint owner)* |
| American Century #1 | $16,208.08 | Sandra *(joint owner)* | Baughman *(joint owner)* |
| American Century #2 | $13,226.21 | Sandra *(joint owner)* | Baughman *(joint owner)* |
| UMB Checking | $2,483.81 | Sandra *(joint owner)* | Baughman *(POD)* |

_____

[2]  It appears that, when Reynolds purchased UMB CD #1, she originally designated Sandra as the POD beneficiary.  The next day, when Reynolds purchased UMB CD #2, Reynolds changed this and declared Sandra as the joint owner of both UMB CD #1 and UMB CD #2.

| Account | Final Balance | Final Beneficiary *(type)* | Previous Beneficiary *(type)* |
|---|---|---|---|
| UMB CD #1 | $118,684.86 | Sandra *(joint owner)* | *None* |
| UMB CD #2 | $41,468.75 | Sandra *(joint owner)* | *None* |
| UMB CD #3 | $202,916.99 | Sandra *(POD)* | *None* |

In 2011, Williams filed suit in the Circuit Court of Jackson County. In the first three counts of his second amended petition, he alleges that the Nelsons, acting in concert, exerted undue influence to cause Reynolds:

> … to place Sandra Nelson as payable on death beneficiary and/or joint tenant with right of survivorship and/or transfer on death beneficiary to substantially all of Betty M. Reynolds' personal property, consisting of certificates of deposit, bank accounts, investment accounts and a motor vehicle.

As a result, Williams seeks a declaration that the assets to which Sandra succeeded upon Reynolds' death – either as joint owner with the right of survivorship or as POD beneficiary – should be made a part of Reynolds' probate estate under section 473.340 (Count I),[3] or are subject to a constructive trust (Count III). In Count II, Williams seeks to have Reynolds' transfers of joint ownership to Sandra, and her designation of Sandra as POD beneficiary, set aside and declared void.

The remaining counts are against Kenneth alone. Williams alleges that Kenneth breached his fiduciary duty as Reynolds' attorney (Count IV) and/or committed legal malpractice (Count V) by causing Reynolds to name Sandra as her attorney-in-fact and

---

[3] Unless otherwise indicated, all statutory citations are to the Revised Statutes of Missouri, as amended though the Cumulative Supplement 2011.

by causing her to transfer joint ownership to Sandra of, or designate Sandra as POD beneficiary on, most of Reynolds' personal property.

Kenneth and Sandra Nelson filed motions for summary judgment. They argue that no one can challenge their alleged use of undue influence regarding Reynolds' estate planning decisions unless that person was a joint owner or POD beneficiary of Reynolds' accounts at the time the Nelsons' undue influence was alleged to have occurred. Because they insist Williams had no such interest, the Nelsons contend he suffered no harm from their alleged undue influence over Reynolds and lacks standing to challenge them.

Williams opposed the Nelsons' motions on the ground that, but for the Nelsons' undue influence, Reynolds would not have made Sandra a joint owner of (or designated her as the POD beneficiary on) these accounts and, therefore, Sandra would not have become the sole owner of those accounts when Reynolds died. Instead, Williams contends those assets would have become part of Reynolds' probate estate and been distributed (at least in part) to him. The trial court sustained the Nelsons' motions. Williams timely appealed, and this Court has jurisdiction of the case pursuant to article V, section 10, of the Missouri Constitution.

**Standard of Review**

Appellate review of summary judgment "is essentially *de novo*." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The Court reviews the record in the light most favorable to the non-movant and affords that party the benefit of all reasonable inferences from the record. *Id.* "The propriety of

6

summary judgment is purely an issue of law," and "an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

## Analysis

Before reaching the merits of Williams' appeal, the Court first considers whether to dismiss this appeal on its own motion due to the defects in Williams' substitute brief. This appeal is before this Court because the Nelsons, aggrieved by the court of appeals' opinion (which reached the same conclusion this Court reaches here), filed an application to transfer pursuant to Rule 83.04.

After this Court granted the Nelsons' application, Williams filed a substitute brief pursuant to Rule 83.08(b). However, all four of the points relied on in Williams' substitute brief fail to comply with the requirements of Rule 84.04 because each of them fails to "identify the ***trial court ruling*** or action that the appellant challenges." Rule 84.04(d)(1)(A) (emphasis added). Instead, the substitute points only identify various aspects of the ***court of appeals' decision*** with which Williams agrees.[4]

Rule 83.09 provides that, unless the matter is retransferred, every appeal that comes to this Court from the court of appeals – whether by certification, transfer (before or after opinion), or certiorari – will be decided "the same as on original appeal." This means that the transfer immediately renders the court of appeals' decision (if any) a nullity and the parties must proceed in this Court as though the appeal properly had been

---

[4] For example, Williams' first point relied on states: "The Western District Court of Appeals correctly held that appellant has standing to pursue his claim that three UMB Bank certificates of deposit were obtained by Sandra Nelson by undue influence of Sandra Nelson and Kenneth Nelson." The remaining points use this same approach.

7

filed here in the first instance. The record filed in the court of appeals becomes the record in this Court. Rule 83.08(a).

Rule 83.08(b) provides that a "party may file a substitute brief in this Court." Though the Court encourages such briefs, they are not required and a party may choose to stand on the brief(s) filed in the court of appeals. If a party chooses to file a substitute brief, however, Rule 83.08(b) provides that the "substitute brief shall conform with Rule 84.04, [that it] shall include all claims the party desires this Court to review, [and that it] shall not alter the basis of any claim that was raised in the court of appeals brief[.]" Finally, Rule 83.08(a) provides that the parties are to retain the same appellant or respondent designations they had before the transfer. This emphasizes that the question is not whether the court of appeals was correct but whether the trial court's judgment should be affirmed, reversed, or vacated and remanded.

The defect in Williams' points is not subtle or technical. By focusing solely on what he argues the court of appeals did correctly, he fails to identify – let alone challenge – any error by the trial court. Accordingly, Williams' points violate Rule 84.04(d) and preserve nothing for appellate review. *See Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 638 (Mo. banc 2013) ("questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered to be abandoned on appeal and no longer an issue in the case") (internal quotation marks omitted). The Nelsons contend the Court should affirm on this basis alone, without addressing the merits of Williams' claims. *See Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978); *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998). The Court

will not do so. Under Rule 83.03(b), if Williams had not filed a substitute brief, the Court would proceed on the basis of the brief Williams filed in the court of appeals. Accordingly, the Court will strike Williams' substitute brief and proceed as though it had not been filed. This approach best balances the need to enforce Rule 84.04(d) and the Court's policy "to decide a case on its merits" whenever possible.[5] *J.A.D.*, 978 S.W.2d at 338.

In Williams' court of appeals brief, he claims the trial court erred in granting the Nelsons' motions for summary judgment for lack of standing. Most of Williams' arguments turn on whether the Nelsons' alleged undue influence over Reynolds' estate planning decisions harmed Williams directly. But for their undue influence, Williams claims that Sandra would not have become the sole owner of these accounts upon Reynolds' death. Instead, if Reynolds' transfers of joint ownership of (or her designations of Sandra as POD beneficiary on) these accounts are not valid, Williams contends those accounts would have become a part of Reynolds' probate estate and been distributed (at least in part) to him according to Reynolds' will. The Court agrees, and holds that Williams has standing to challenge the Nelsons' conduct and Sandra's resulting ownership. This holding is limited, however, only to those accounts for which

---

[5] The Court perceives no prejudice to the respondents in this holding. Their brief in the court of appeals does an excellent job addressing Williams' claims, and has been considered here. Their substitute brief in this Court further elucidates the issues most in dispute and it, too, has been considered. The only party injured by Williams' failure to abide by Rule 84.04(d) is Williams, and then only to the extent he lost the benefit of honing his arguments as respondents did theirs.

9

there was no valid joint ownership or POD designation in effect at the time the Nelsons allegedly unduly influenced Reynolds to give Sandra her interests.[6]

### A.   UMB CD #3

Williams alleges that the Nelsons unduly influenced Reynolds to designate Sandra as the POD beneficiary for UMB CD #3. Because the designation of a POD beneficiary is a "nonprobate transfer" as defined in section § 461.005(7) and (15), Reynolds' designation of Sandra as the POD beneficiary for UMB CD #3 is governed by sections 461.003 to 461.081 (the "Nonprobate Transfers Law" or "NTL").

Section 461.028.5 provides that Reynolds' designation is "conclusive evidence in the absence of fraud, duress, undue influence or evidence of clerical mistake by the transferring entity [UMB] that the direction was regularly made by the owner [Reynolds] and accepted by the transferring entity [UMB], and was not revoked or changed prior to the death giving rise to the transfer." But, under section 461.054.1, any "beneficiary designation or a revocation of a beneficiary designation that is procured by fraud, duress or undue influence is void." Accordingly, if the Nelsons exerted undue influence to cause Reynolds to designate Sandra as the POD beneficiary for UMB CD #3, as Williams alleges, then that designation is void.

If Reynolds' designation of Sandra as the POD beneficiary for UMB CD #3 is void, then that CD would have become part of Reynolds' estate when she died because

---

[6]   The Nelsons do not seek summary judgment on the basis that Williams cannot make a submissible case on whether undue influence occurred. Accordingly, the Court assumes that he can do so, but makes no determination in that regard. This opinion should not be read to suggest that he will do so or that any undue influence, in fact, occurred.

10

there was no valid POD beneficiary (or joint ownership) prior to Reynolds' designation of Sandra that Williams is challenging. Accordingly, Williams has standing to challenge Sandra's ownership of, and the Nelsons' conduct concerning, UMB CD #3.

The Nelsons seek to avoid the logic of this result by extending it. They argue that, if Reynolds' designation of Sandra as the POD beneficiary for UMB CD #3 is void due to undue influence, then Reynolds' decision to buy that CD (and her decision to withdraw funds from other accounts for that purchase) must also be void. As a result, the Nelsons claim that the Court cannot determine who has standing to challenge their conduct until it returns (at least theoretically) the money Reynolds used to buy that CD to whatever account(s) it was in before the Nelsons unduly influenced Reynolds to use the funds to buy UMB CD #3.

The Nelsons did not prove which account(s) this was, but they contend – and Williams concedes – that it must have been one of the four accounts (out of the original seven) that Reynolds owned in 2000 but closed prior to her death. Because Lamp or Baughman was the joint owner of (or POD beneficiary on) all four of these accounts, the Nelsons reason that – but for their alleged undue influence – the money Reynolds used to buy UMB CD #3 would have stayed in the original account(s) and passed to Lamp or Baughman when Reynolds died. Accordingly, the Nelsons insist that only Lamp or Baughman – but not Williams – can have standing to challenge their conduct because only Lamp or Baughman – but not Williams – was harmed by the Nelsons' alleged undue influence over Reynolds.

11

The Nelsons' argument misconstrues Williams' allegations.  He does not allege that the Nelsons unduly influenced every facet of every decision that Reynolds made from 2006 to her death.[7]  Instead, Williams alleges only that the Nelsons unduly influenced Reynolds' estate planning decisions.  The decision whether to use cash in one bank to purchase an investment in another is not an estate planning decision.  On the other hand, the decision whether (and to whom) to give joint ownership of the new asset, or whether (and to whom) to make a POD beneficiary designation on the new asset, is an estate planning decision.

Here, Reynolds' decision to withdraw the money she needed to purchase UMB CD #3 from whichever account was not an estate planning decision, and it is not within Williams' allegations.  Instead, like every other action, it is presumed valid until someone challenges it, and the Nelsons offer no proof in their motions for summary judgment that Reynolds' decision was invalid.  Accordingly, the Nelsons' effort to extend the effects of their alleged wrongdoing beyond Williams' reach is not a sufficient basis on which to grant their motions for summary judgment.

The Nelsons' argument also misconstrues the nature of their burden as the summary judgment movants:

---

[7]  "Undue influence" does not refer to a permanent or pervasive state.  Instead, it refers to control over the will of another that is exercised to such an extent or under such circumstances that it vitiates the controlled party's intent to make a specific decision or to engage in a discreet transaction. *See Gibony v. Foster*, 130 S.W. 314, 324 (Mo. 1910) ("It may be that Mrs. Banfield as the daughter of Mrs. Gibony had an undue influence over her, but it is fundamental that *it is not the existence of undue influence but the exercise of it* in the execution of the will which invalidates such will.") (emphasis added).

12

> The prima facie showing required by Rule 74.04(c) is necessarily different where the movant is a "defending party." Where a "defending party" will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment. Rather, a "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.

*ITT Commercial*, 854 S.W.2d at 381 (emphasis in original).

The Nelsons' motions fall into the second category described above. It is their burden to show that Williams ***cannot*** make a submissible case on one or more of the elements of his claim. They failed to do so. Instead, they assume – but do not set forth uncontested facts proving – that Reynolds' decision to withdraw funds from one or more accounts to purchase UMB CD #3 resulted from undue influence and then insist that Williams must prove their assumption wrong.[8] This is incorrect. Until the Nelsons meet their burden under Rule 74.04(c) by showing that Williams cannot make a submissible case as to harm and causation, Williams does not have to show anything. *ITT Commercial*, 854 S.W.2d at 381. He may have the burden of proof at trial, but the

---

[8] The Nelsons do not offer uncontested facts proving that their undue influence was so pervasive that they would not have allowed her to purchase UMB CD #3 (and, therefore, would not have allowed her to withdraw money from another account for that purpose) unless Reynolds designated Sandra as the POD beneficiary on that asset. If so, their motions would have belonged under the first category of summary judgment motions identified in the *ITT Commercial* quote above. Instead, their motions merely assert Williams lacks standing because he cannot make a submissible case on the issues of harm and causation at trial.

13

burden under Rule 74.04 is on the movant to show both that there is no genuine dispute as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.*

Finally, the Nelsons' argument misconstrues the nature of section 461.054.1. Under section 461.054.1, the designation of a POD beneficiary is void if procured through undue influence. The 1995 Committee Comment to Section 461.054 states that property that is subject to a void beneficiary designation as a result of fraud, duress, or undue influence "will become part of the probate estate." 4A John A. Borron Jr., MISSOURI PRACTICE: PROBATE AND SURROGATE LAW MANUAL (2001) ("MANUAL"), at 597. Even though the Comment may not always be accurate,[9] it is correct where – as here – there is no prior valid beneficiary designation or valid contingent beneficiary designation on which to fall back. Accordingly, Williams does not have to show that this money still would have been withdrawn from earlier accounts in the absence of undue influence by the Nelsons. It is sufficient that he show, as he has alleged, that – but for the

---

[9] In *Crocker v. Crocker*, 261 S.W.3d 724, 727-28 (Mo. App. 2008), the court notes that Judge Borron expands on this Comment by stating that section 461.054 only applies to an original beneficiary designation, not a subsequent one. *Id*. at 728 (citing MANUAL at 598). This is not correct. Plainly, nothing in section 461.054 limits its application to an original beneficiary designation. Read in full, the Comment merely notes that, in the absence of a prior valid contingent beneficiary designation, section 461.054 requires that property subject to a void beneficiary designation becomes part of the probate estate *instead of* passing to the decedent's spouse and children as the previous NPT law had required. MANUAL at 598. Accordingly, it appears that Judge Borron intended to say that the Comment – rather than the statute – applies only to an original beneficiary designation, and so it does. On the other hand, *Crocker* rightly holds that section 461.054 is not limited only to the original designation and, instead, applies to a second or subsequent beneficiary designation as well. *Crocker*, 261 S.W.3d at 727-28. When such a designation is void under section 461.054, courts must give effect to a valid prior designation. *Id*. at 727 (even though "a subsequent beneficiary designation revokes a prior beneficiary designation, … a *void* subsequent beneficiary designation [does not] revoke a *valid* prior beneficiary designation") (emphasis in original).

14

Nelsons' undue influence over Reynolds' estate planning decisions – UMB CD #3 would have become part of Reynolds' probate estate.

### B. UMB CD #1 and UMB CD #2

In 2008, Reynolds obtained UMB CD #1 and UMB CD #2 and gave Sandra joint ownership (with the right of survivorship) in both assets. Like UMB CD #3, there was no prior joint owner of, or POD beneficiary designation on, either of these assets. But, unlike UMB CD #3, Reynolds' transfer of joint ownership interest in UMB CD #1 and UMB CD #2 to Sandra is not a "nonprobate transfer" and, therefore, it is not governed by the NTL.

Even though section 461.054 does not apply to Reynolds' transfer of joint ownership interests in UMB CD #1 and UMB CD #2 to Sandra because they were not "nonprobate transfers" under section 461.005(7), such transfers, nevertheless, are void if procured by fraud or undue influence. Designations of joint ownership in deposit records are controlled by section 362.470. This statute provides that the designations Reynolds made concerning Sandra's joint ownership of these two CDs are conclusive evidence of the joint owner's title only "in the absence of fraud of undue influence." This is because the creation of the joint owner's interest by such instructions is considered a gift, and "all of the common-law elements [must] be present in order for the account to constitute a valid gift *inter vivos*." *In re LaGarce's Estate*, 487 S.W.2d 493, 500 (Mo. banc 1972). Fraud or undue influence negates the elements of intent and capacity and render the title instructions (i.e., the purported gift) void. Though *LaGarce's Estate* involved a different

statute, this Court noted specifically that the legislature "amended § 362.470 to incorporate the *LaGarce* holding." *Fix v. Fix*, 847 S.W.2d 762, 768 (Mo. banc 1993).

If Reynolds' gifts to Sandra of joint ownership interests in UMB CD #1 and UMB CD #2 are void, they must be disregarded entirely. Thus, like a designation of a POD beneficiary that is void under 461.054, a transfer of joint ownership that is void under section 362.470 has no effect on the *status quo ante*. In this case, that means that UMB CD #1 and UMB CD #2 would have become part of Reynolds' estate upon her death because Reynolds made no prior transfer of joint ownership (and no prior valid POD beneficiary designation) for these assets. Because these CDs would have become part of Reynolds' probate estate and been distributed (in part) to Williams, he has standing to challenge Sandra's ownership of, and the Nelsons' alleged undue influence regarding, these assets.

As with UMB CD #3, the Nelsons argue that Williams cannot challenge Reynolds' transfers to Sandra of joint ownership interest in UMB CD #1 and UMB CD #2 without also challenging Reynolds' decision to purchase these CDs. For that reason, the Nelsons argue that – to determine who has standing to challenge their actions – the Court must look only to those who would have had standing to challenge Reynolds' decision to purchase these CDs. Because the money Reynolds used to purchase these assets came from an (unidentified) account(s) on which either Lamp or Baughman was designated the POD beneficiary, the Nelsons conclude only one of these two ladies has standing because only she was injured directly by the Nelsons' alleged undue influence causing Reynolds to withdraw the money used to buy UMB CD #1 and UMB CD #2.

16

Again, the Nelsons' argument rests on unproven facts and an unjustified assumption. Reynolds made two separate decisions. The first was whether to withdraw funds from the existing account(s) to purchase these CDs. The second was whether to transfer joint ownership of those deposits to someone and, if so, whether to give it to Sandra. The Nelsons insist this is one indivisible decision and Williams cannot challenge any part of it unless he challenges the whole. But Williams distinguishes these decisions even if the Nelsons do not. He alleges only that the Nelsons exerted undue influence over Reynolds' estate planning decisions. This allegation encompasses Reynolds' second decision, but it does not encompass the first. The decision whether to purchase the CDs was an investment decision, not an estate planning decision.

If Reynolds' every act and thought was under the control of the Nelsons from 2006 on, as the Nelsons unjustly characterize Williams' claim, they did not have to go through this complex process to steal these funds; they simply could have had Reynolds replace Lamp and/or Baughman as the joint owner of the original account(s). In fact, they did this for other accounts, but they did not do so here. One reasonable explanation is that the Nelsons did not exert undue influence over all of Reynolds' actions, only her estate planning decisions. Whether this is true is not a question for summary judgment. What matters in this context is that this is all that Williams alleges and it is all that he has to prove. His ability to do so is not challenged in these summary judgment motions.

If the Nelsons seek summary judgment because Reynolds' decision to withdraw funds from other accounts and purchase these CDs was inextricably bound to the decision to give joint ownership of them to Sandra, and because their undue influence over

17

Reynolds would not have allowed Reynolds to do the former without the latter, then the Nelsons must support that motion with evidence of undisputed facts. They fail to do so. They do not prove anything about Reynolds' decisions to buy these CDs. They do not prove the accounts from which Reynolds withdrew the money or whether the withdrawal of the funds and purchase of the CDs were contemporaneous or separated by hours, days or weeks. More importantly, they do not prove that Reynolds' decision to buy these CDs was the result of undue influence so pervasive that it controlled both this decision and the decision to name Sandra as the joint owner of the assets as a single decision. Again, the burden at trial will be on Williams to prove his claims, but he has no burden – there, or in response to the Nelsons' motions for summary judgment – to disprove every hypothetical alternative the Nelsons can assert.

To prove his allegations – including his standing – regarding Counts I to III, Williams need only prove that the Nelsons unduly influenced Reynolds' decisions: (1) to designate Sandra as the POD beneficiary of UMB CD #3; and (2) to give Sandra joint ownership with the right of survivorship of UMB CD #1 and UMB CD #2. If so, they are void and must be disregarded. Then, Williams must prove that there was no prior valid joint ownership of, or POD beneficiary designation on, any of these three CDs which would take effect upon Reynolds' death and prevent the asset from becoming a part of her probate estate. The Nelsons have not shown that Williams cannot make a submissible case on any of these issues and, therefore, failed to carry their initial burden under Rule 74.04(c).

18

*C.* ***The Remaining Assets***[10]

The analysis regarding Williams' standing to challenge the Nelsons' use of undue influence to manipulate Reynolds' other estate planning decisions follows the same path but reaches a different result. Reynolds gave Sandra joint ownership of the two American Century brokerage accounts, the remaining KCPCU account, and the UMB checking account. Like Reynolds' gift to Sandra of joint ownership of UMB CD #1 and UMB CD #2, Reynolds' decisions to give Sandra joint ownership of these remaining assets was not a "nonprobate transfer," and it is not governed by section 461.054 and the other NPT statutes. Instead, joint ownership of the KCPCU and UMB accounts is governed by section 362.470, and joint ownership of the brokerage accounts is governed by the common law. *See In re Estate of Hayes*, 941 S.W.2d 630, 633 (Mo. App. 1997) (common law and not § 362.470 applies to brokerage accounts because statute is limited to "banks" and "trust companies"). It makes no practical difference which of these governs, however, because Reynolds' decisions are void under any of these schemes to the extent they resulted from fraud or undue influence.

But, unlike Reynolds' decision to make Sandra joint owner of UMB CD #1 and UMB CD #2, or her decision to designate Sandra POD beneficiary on UMB CD #3,

---

[10] Williams abandoned his arguments with respect to these remaining assets when he did not address them in his substitute brief. *See* Rule 83.03(b) ("material included in the court of appeals brief that is not included in the substitute brief is abandoned"). But, because the Court has stricken Williams' substitute brief and limited its review to the claims raised in his brief to the court of appeals, it is not clear that his substitute brief should be effective for purposes of a Rule 83.03(b) waiver when the Court has found it ineffective for any other purpose. The Court need not resolve this question, however, because the issues Williams abandoned in his substitute brief (i.e., the issues regarding the "remaining assets") are ruled against Williams here as they were in the court of appeals.

19

Reynolds' decision to make Sandra a joint owner of these remaining assets was not her first and only estate planning decision concerning these assets. Instead, before Reynolds made Sandra a joint owner of these assets, she already had made Baughman a joint owner of them. To be clear, Reynolds' subsequent designation of Sandra as the joint owner – if valid – was sufficient to divest Baughman of her prior joint ownership interest. *Burkholder ex rel. Burkholder v. Burkholder*, 48 S.W.3d 596, 598 (Mo. banc 2001) (under section 362.470, a "sole contributor can also terminate a joint tenancy by having the bank or savings association make physical changes on the certificate, or other tangible representation of the account, with corresponding changes in the institution's records").

But, if Reynolds' gifts to Sandra of joint ownership of these four accounts are void due to the Nelsons' undue influence, then those transfers are of no legal effect. Not only are they not effective to make Sandra a joint owner of these accounts, but they are also not effective to divest Baughman of her joint ownership interests in the same accounts. Thus, the Nelsons rely on *Crocker*, 261 S.W.3d at 727 (prior valid beneficiary deed survives subsequent void beneficiary deed), and *Skidmore v. Back*, 512 S.W.2d 223, 231 (Mo. App. 1974) (prior valid joint owner of savings account survives subsequent void effort to terminate ownership interest), to claim that – even if Williams succeeded in proving that the Nelsons unduly influenced Reynolds to give Sandra joint ownership of these four remaining accounts – the accounts would have passed to Baughman and not to Reynolds' probate estate. On those assets, the Nelsons are correct.[11] Baughman has

---

[11] Because *Crocker* and *Skidmore* concern circumstances in which there is a prior valid declaration of joint ownership or designation of a POD beneficiary, these cases offer no support

standing to challenge the Nelsons' actions with respect to these four remaining accounts, but Williams does not. Accordingly, the trial court properly dismissed Counts I, II, and III with respect to those assets.

## Conclusion

For the reasons set forth above, the trial court's dismissal of Williams' claims pertaining to the three UMB CDs is vacated, and the case is remanded. With respect to all claims relating to the KCPCU IRAs, the American Century Accounts, and the UMB Checking Account, the trial court's dismissal is affirmed.[12]

_____
Paul C. Wilson, Judge

Russell, C.J., Breckenridge, Fischer and Teitelman, JJ., concur;
Draper, J., dissents in separate opinion filed; Stith, J., concurs
in opinion of Draper, J.

---

for the Nelsons concerning UMB CD #1, UMB CD #2, and UMB CD #3, none of which had such a prior valid declaration or designation.

[12] Because the trial court dismissed Counts IV and V on the ground that Williams did not have standing with respect to any of the identified assets, the Court vacates the judgment with regard to these counts because he has standing to bring those claims, at least as they pertain to the three CDs. The Nelsons, as respondents, have not persuaded the Court that any of their other claims for summary judgment on these counts is a sufficient alternative basis on which to affirm the trial court's judgment.

21



# SUPREME COURT OF MISSOURI
## en banc

ERIC WILLIAMS,                                    )
                                                  )
      Appellant,                          )
                                                  )
v.                                                )     No. SC93853
                                                  )
WILLIAM L. HUBBARD, LIMITED                       )
ADMINISTRATOR AD LITEM                            )
OF THE ESTATE OF                                  )
BETTY MARGARET REYNOLDS  AND                      )
KENNETH NELSON AND                                )
SANDRA K. NELSON,                                 )
HUSBAND AND WIFE,                                 )
                                                  )
      Respondents.                        )

### DISSENTING OPINION

I respectfully dissent from the principal opinion in that I believe the trial

court did not err in granting summary judgment in favor of Kenneth Nelson

(hereinafter, "Attorney") and Sandra Nelson (hereinafter, "Nelson").  Following

multiple years of discovery, Eric Williams (hereinafter, "Williams") failed to

present evidence demonstrating that he had a legally protectable interest in the

ownership of Betty Reynolds' (hereinafter, "Decedent") accounts that did not pass through probate.   Accordingly, I would affirm the trial court's judgment.

**Substitute briefs**

The principal opinion aptly notes that Williams' substitute brief in this case is less than a model of clarity and fails to comply with Rule 83.08.  However, the principal opinion then decides, without authority, to dismiss Williams' substitute brief and review the claims he made in his court of appeals brief.  The principal opinion's renegade decision to do so creates a broader review of Williams' claims than this Court's rules provide.

Rule 83.08(b) clearly provides that, "Any material included in the court of appeals brief that is not included in the substitute brief is abandoned."  Williams' substitute brief challenges only three UMB Bank certificates of deposit.  Williams' original appellate brief challenges, and the principal opinion addresses, seven accounts.  Clearly, since Williams limited the claims in his substitute brief filed in this Court to the three UMB Bank certificates of deposit, those are the only challenged assets properly before this Court; any other claim regarding any other account has been abandoned. *See State v. Davidson*, 982 S.W.2d 238, 243 n.2 (Mo. banc 1998); *Kauzlarich v. Atchison, Topeka, and Santa Fe Ry. Co.*, 910 S.W.2d 254, 256 (Mo. banc 1995); *State v. Doolittle*, 896 S.W.2d 27, 28 n.1 (Mo. banc 1995).

The principal opinion's action, while not supported by authority, also detrimentally affects an opposing party's position upon the reinstatement of

Williams' court of appeals' brief. Nelson and Attorney could have varied their response to the substitute brief. Nelson and Attorney could be prejudiced by this Court's reinstatement of the court of appeals' brief in that they would be precluded from responding to the exact arguments presented to this Court in Williams' substitute brief.

In this case, the substitute brief's points on appeal addressed the court of appeals' opinion, which is incorrect as the principal opinion notes. However, the arguments in the substitute brief were understandable and did not rise to the level necessitating striking of the brief, especially considering the opposing party was able to discern those arguments and respond properly. *Cf. Kim v. Kim*, 431 S.W.3d 524, 526 (Mo. App. W.D. 2014) (dismissing a brief only when the court could not conduct a review of the case without becoming the party's advocate); *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Center, Inc.*, 430 S.W.3d 274, 286 (Mo. App. S.D. 2014) (same); and *Richard v. Wells Fargo Bank, N.A.*, 418 S.W.3d 468, 476 (Mo. App. E.D. 2013) (recognizing deficiencies in the brief but review was not so hampered that the court would advocate for the appellant).

### Background

The principal opinion notes that Decedent changed her will in 2006. At that time, the primary change Decedent made to her will was to the beneficiaries. Her prior will contained three beneficiaries, while the 2006 will designated only two: Williams and Nelson. Decedent indicated she was doing so because she

3

wanted to replace the beneficiaries with younger people. This change also increased Williams' share of her will from one-third to one-half. Not surprisingly, Williams does not challenge this change to Decedent's estate planning as being unduly influenced. Williams asserts any undue influence exercised upon Decedent began twenty-two days later.

The principal opinion highlights several facts, which while not technically inaccurate, bias the ultimate outcome of its decision. While neither of these distinctions directly implicate the issues on appeal, the principal opinion has highlighted this limited factual background further advocating for and supplementing Williams' position, which was not raised before this Court in his substitute brief.

At the time of Decedent's death in April 2010, the principal opinion asserts that "her will was of little practical significance because she had few assets that became part of her probate estate." (Slip Op. at 2). The principal opinion insinuates that Decedent's subsequent changes to her estate intentionally divested funds and assets away from her probate estate and into non-probate assets and these changes were an anomaly. Yet, this is contrary to the record. Williams set forth facts demonstrating that Decedent's 2000 will contained $5,000 or less of assets, while there was over $464,000 in accounts with POD or joint tenancy designations. At the time of her death, Decedent's will still contained few assets and there were over $456,000 in nonprobate assets.

4

Further, the principal opinion makes note of the diminished value of a specific account between April 2000 and April 2010. The legal file does not state Decedent's age at the time she died, but all indications were that she was an elderly woman at the time of her death. Accordingly, it is natural that an account would diminish in value as she drew money from it to support herself. Given the recent state of the economy and the low interest rates, many who used to draw only interest off of financial accounts for expenses had to reach into the capital, which decreases the amount of the account. There was no indication that Decedent was gainfully employed after her retirement from the Kansas City Police Credit Union. There was no indication in the record that any of the accounts were mismanaged or the funds misappropriated.[1] This is a red-herring meant to cast Nelson and Attorney's alleged influence over Decedent in a more sinister light.

## Undue Influence

Viewing the record in the light most favorable to the party against whom judgment was entered, I believe Williams presented evidence to support his assertion that Attorney and Nelson exercised undue influence over her estate planning in that she was unduly influenced to close accounts that were subject to valid joint ownership or POD designations. *See Lewis v. Gilmore*, 366 S.W.3d 522, 524 (Mo. banc 2012). The undisputed material facts demonstrate that all the funds for the UMB CDs originated from accounts that Decedent closed. Williams

---

[1] The dissent is perplexed at the principal opinion's discussion of one account because at the time of her death, an aggregate of Decedent's accounts that were not subject to probate were valued at more than $456,000.

failed to present any evidence that Nelson and Attorney subsequently exerted undue influence over Decedent to open any account—only that there was undue influence in the closing of the accounts.

Without authority, the principal opinion decides that "the decision whether (and to whom) to give joint ownership of the new asset, or whether (and to whom) to make a POD beneficiary designation on the new asset, is an estate planning decision." (Slip Op. at 12). However, this proclamation overlooks the fact that *closing an account* with either a POD beneficiary designation or joint ownership designation equally constitutes an estate planning decision. Logically and statutorily, divesting a person of an interest or removing a person from an account is an estate planning decision as it determines who does not receive the proceeds of that account. *See* sections 461.054 and 461.037, RSMo 2000.[2]

In support of its theory that Decedent was unduly influenced in the opening of the UMB CDs, the principal opinion states that under section 461.054.1 "the designation of a POD beneficiary is void if procured through undue influence." (Slip Op. at 14). However, the principal opinion has chosen to selectively cite this statutory provision. Section 461.054.1 provides, "A beneficiary designation *or a revocation* of a beneficiary designation that is procured by fraud, duress or undue influence is void." (Emphasis added).

As a contingent beneficiary of Decedent's will, Williams concedes he had no personal interest in the accounts when Decedent was forced to close them. At

_____

[2] All further statutory references herein are to RSMo 2000.

the point in time wherein Williams potentially can demonstrate undue influence by forcing Decedent to close various accounts, those accounts were all subject to valid joint ownership or POD designations. Williams, as he admits, had no interest in those accounts. The persons divested of their interests by any alleged undue influence were Louise Baughman (hereinafter, "Baughman") and Norma Lamp (hereinafter, "Lamp").

According to the facts as presented by Williams, Nelson and Attorney exercised undue influence over Decedent by forcing her to close the accounts which designated Baughman and Lamp, thereby revoking Baughman and Lamp's status. Nelson and Attorney would have forced Decedent to cancel the estate planning choice Decedent made of her own free will. *See Crocker v. Crocker*, 261 S.W.3d 724, 727 (Mo. App. W.D. 2008) (finding that taking summary judgment allegations as true, creation of a new beneficiary deed was a nullity as undue influence was exerted to revoke the prior deed); *Hammons v. Eisert*, 745 S.W.2d 253, 258 (Mo. App. S.D. 1988) (finding the beneficiary of a revocable trust has a cause of action against a person who exerted undue influence and induces a settlor to revoke the trust and divert funds). Because Williams presented evidence that the closing of these accounts was due to undue influence exerted upon Decedent, Decedent's revocation of Baughman and Lamp's beneficiary status should be declared void. Section 461.054.1. Decedent's subsequent action of opening new accounts is of no import in this analysis because at the time Attorney and Nelson are alleged to have forced her to close those accounts, Decedent's free choice of to

7

whom to leave her money was overridden; all subsequent matters were tainted by the initial exercise of undue influence that Williams presented in his response to Attorney and Nelson's summary judgment motion. Williams failed to present genuine issues of material fact to overcome Attorney and Nelson's summary judgment motion.

## Conclusion

I would affirm the trial court's judgment.

_____
GEORGE W. DRAPER III, JUDGE

8