**BLUE CROSS AND BLUE SHIELD OF MISSOURI, A Missouri Nonprofit Corporation, Appellant–Respondent,**

**v.**

**Jeremiah W. (Jay) NIXON, in his Official Capacity as the Attorney General of the State of Missouri, Defendant,**

**Jay Angoff, in his Official Capacity as the Director of the Missouri Department of Insurance, Defendant,**

**Anthony J. Sarkis, Jr., Respondent–Appellant,**

**and**

**James Hacking, individually and as Representatives of a Class of Subscribers of Blue Cross and Blue Shield of Missouri and its Affiliates, Plaintiff.**

Nos. WD 59766, WD 59849.

Missouri Court of Appeals, Western District.

April 30, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 2002.

Application for Transfer Denied Aug. 27, 2002.

Richard A. Ahrens, for appellant-respondent.

Jeffrey J. Lowe, St. Louis, for respondent-appellant.

Paul C. Wilson, Richard G. Callahan, Jefferson City, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, PAUL SPINDEN, Chief Judge, and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Anthony Sarkis, individually and as representative of a class of plan subscribers, appeals from a declaratory judgment entered in the Circuit Court of Cole County declaring that Respondent/Cross–Appellant Blue Cross Blue Shield of Missouri ("BCBS") was a public benefit corporation rather than a mutual benefit corporation. BCBS cross-appeals challenging the trial court's finding that Sarkis had standing to litigate this issue.

Sarkis is and has been a subscriber to medical plans offered by BCBS and its predecessors since 1959. He was party to this action in his individual capacity and as the representative of a class that was certified by agreed order on July 1, 1999. The class was defined as all persons who are or have been subscribers to medical plans of BCBS and its affiliates on or after June 20, 1995.

BCBS is a Missouri nonprofit corporation formed under Chapter 355 with its principal place of business in St. Louis, Missouri. In 1986, two Missouri nonprofit corporations, Blue Cross Health Services, Inc. of Missouri and Missouri Medical Services, Inc., merged to form BCBS.[1] After the two companies merged, the newly formed corporation's Articles of Incorporation provided that:

> The corporation shall conduct its affairs in accordance with the General Not for Profit Corporation Law of the State of Missouri without profit to any member. In the event of dissolution of the corporation, its assets shall be applied and distributed pursuant to the provisions of the General Not For Profit Corporation Law or under direction of a court having jurisdiction thereof.

In 1994, BCBS formed a for-profit subsidiary named RightCHOICE Managed Care, Inc. BCBS transferred its managed care assets and liabilities to this subsidiary. Approximately twenty percent of the shares in RightCHOICE were issued to the public for cash.

Following the reorganization of 1994, a dispute arose between the State of Missouri and BCBS over additional moneys claimed to be owed to the State as a result of that reorganization. The Attorney General and the Department of Insurance contended that BCBS had abandoned its nonprofit purposes and abused its nonprofit powers by transferring valuable assets to a for-profit, publicly traded subsidiary.

In April 1995, BCBS amended its Articles of Incorporation and eliminated its Corporate Assembly and all members, in-

---

1. In 1936, a civic group in St. Louis established Group Hospital Services, Inc. of Missouri ("GHSI"). GHSI was formed as a nonprofit corporation under the applicable statutory chapter. GHSI offered prepaid hospital plans under which individuals could enroll, pay monthly dues, and receive hospital care with little to no additional cost.

In 1964, GHSI changed its name to Blue Cross Hospital Service, Inc. of Missouri. In 1985, the corporation changed its name to Blue Cross Health Services, Inc. of Missouri ("BCHS"). From 1936 through 1986, this corporation was exempt from federal income taxes as a "social welfare organization." In 1986, Congress revoked the tax exemption for all Blue Cross plans in the country.

In 1944, Missouri Medical Services, Inc. was formed as a Missouri nonprofit corporation under the applicable statutes. MMS was formed to provide prepaid medical plans to cover physician and pharmaceutical expenses.

In 1986, MMS merged with BCHS and became Blue Cross Blue Shield of Missouri ("BCBS").

cluding all voting rights. Under these amendments, the BCBS Board of Directors became self-perpetuating.

On June 20, 1995, BCBS filed amendments to its Articles of Incorporation.[2] In relevant part, those articles stated:

> The Corporation shall operate as a mutual benefit corporation.
>
> In the event of the dissolution of the Corporation, the assets of the Corporation remaining after all creditors have been paid and all other claims and obligations of the Corporation have been satisfied or provided for shall be distributed to the Subscribers, in proportion to the premium dollars paid by each Subscriber (or by an employer or other person for the benefit of a subscriber) the Corporation or any Controlled Subsidiary ... during the twelve calendar months immediately preceding the month in which the effective date of the dissolution of the Corporation occurs; provided, however, that in no event shall any such net assets be distributed to (i) a "public benefit corporation," (ii) the United States, (iii) a state or (iv) a person which is recognized as exempt under Section 501(c)(3) of the Internal Revenue Code. "Subscribers" means those persons who shall subscribe to the Corporation's or a Controlled Subsidiary's hospital, medical and other health care, health care services and/or health care benefits in accordance with the provisions of contracts made with or issued by the persons whom the Corporation holds itself out as benefiting [sic] and serving.

Subsequent to BCBS's reorganization, multiple civil actions were filed. The first case filed was *BCBSMo. v. Angoff et al.* (No. CV196–619CC), which BCBS filed against the Director of the Department of Insurance, the Department of Insurance, and the Attorney General. In that case, BCBS sought a determination of its obligations to the state resulting from the 1994 reorganization. The Department of Insurance filed a counter-claim alleging that BCBS had violated and continued to violate various statutory and common law duties. On December 30, 1996, the trial court in the first case entered summary judgment in favor of the Attorney General and the Department of Insurance. The court found that BCBS was operating in violation of its statutory purposes as a nonprofit health services corporation as a result of the 1994 reorganization.

On November 3, 1997, BCBS filed the present declaratory judgment action against the Attorney General seeking a declaration that it was a mutual benefit corporation rather than a public benefit corporation as defined by § 355.066 and 355.881. The Attorney General answered and filed a counterclaim requesting a declaration that BCBS was a public benefit corporation. On December 3, 1997, the Director of Insurance filed a motion to join

---

2. In 1994, the Missouri General Assembly extensively amended and revised Chapter 355, §§ 355.001 through 355.881, relating to nonprofit corporations. *Blue Cross & Blue Shield of Kansas City, Inc. v. Nixon*, 26 S.W.3d 218, 222 (Mo.App. W.D.2000). This new version of Chapter 355 became effective on July 1, 1995. *Id.* The new law distinguished between "mutual benefit" corporations and "public benefit" corporations and required that all nonprofit corporations in the State existing as of July 1, 1995, be classified under one of those two designations. *Id.* The effective date of the new chapter, July 1, 1995, is the critical date for the determination of whether a corporation in existence at that time should be classified as a "mutual benefit" or a "public benefit" corporation. *Id.* at 232.

Presumably, BCBS's reorganization, amendments to its Articles of Incorporation, and changes to its bylaws in 1994 and the first half of 1995 were made in anticipation of the new law coming into effect.

or intervene in the case. On June 11, 1998, Sarkis filed a Motion to Intervene as a Party Plaintiff as a Matter of Right Pursuant to Rule 52.12(a).

Prior to the court ruling on those motions, on August 17, 1998, BCBS filed an amended petition including the Department of Insurance and Sarkis as parties. In the amended petition, BCBS set forth that the Attorney General and the Department of Insurance sought a declaration that it was a public benefit corporation and that Sarkis sought a declaration that it was a mutual benefit corporation. BCBS contended that Sarkis and the class lacked standing to litigate the issue and requested a declaration of its status as a public or mutual benefit corporation without taking a position on the issue. On September 16, 1998, Sarkis filed an answer to the amended petition and a counterclaim for declaratory and injunctive relief.

On August 4, 1998, this court affirmed the judgment in the initial case related to the 1994 reorganization. *Blue Cross and Blue Shield of Missouri v. Angoff*, No. 53798, 1998 WL 435697 (Mo.App.W.D. Aug. 4, 1998). While that case was pending on transfer to the Missouri Supreme Court, on September 20, 1998, BCBS accepted a settlement offer from the Attorney General and the Department of Insurance to settle all of the claims between those parties in both cases. Under the settlement agreement, BCBS was to convert to a for-profit corporation to be owned by The Missouri Foundation for Health. The Missouri Foundation for Health was to be a public benefit corporation created to identify and address the unmet health care needs of uninsured and underinsured individuals in the former BCBS service area. A new RightCHOICE Managed Care, Inc. was to be formed under Delaware law, and BCBS was to merge with the new RightCHOICE. Eighty-one per-

cent of the new RightCHOICE stock was to be owned by The Missouri Foundation for Health which would divest itself of these shares over time and apply the proceeds to public health purposes.

A third case was filed by Sarkis, individually and on behalf of a class of BCBS subscribers in the Circuit Court of the City of St. Louis against BCBS, RightCHOICE, and several BCBS officers and directors. Sarkis claimed that the 1994 reorganization was unlawful and sought damages. The trial court in that case dismissed the petition with prejudice finding that the plaintiffs lacked standing to sue. On February 1, 2000, the Eastern District of this court affirmed that dismissal in an unpublished opinion. *Sarkis v. Heimburger*, 24 S.W.3d 738 (Mo.App. E.D. 2000).

On June 17, 1999, the parties filed an extensive stipulation of facts and agreed to the admissibility of numerous documents in the case at bar. On July 6, 1999, the Attorney General filed a motion for summary judgment asking the court to declare that BCBS was a public benefit corporation. On August 5, 1999, BCBS filed a motion for summary judgment against Sarkis and the class based on a lack of standing to participate in the declaratory judgment action.

On January 17, 2000, BCBS amended Article VII of its Articles of Incorporation to state:

> In the event of the dissolution of the Corporation, the assets of the Corporation remaining after all creditors have been paid and all other claims and obligations of the Corporation have been satisfied or provided for shall be distributed to any one or more organizations designated by the Board of Directors of the Corporation, each of which shall (i) be either a nonprofit public benefit corporation or recognized as exempt under

Section 501(c)(3) or Section 501(c)(4) of the Internal Revenue Code or any successor sections, and (ii) have as its principal purpose the promotion of public health in the State of Missouri.

On March 6, 2000, BCBS amended Article III of its Articles of Incorporation to state, "This corporation is a public benefit corporation." On May 2, 2000, the parties filed an additional stipulation of facts stipulating to these amendments to the BCBS Articles of Incorporation. The parties further stipulated that the trial court could consider these new stipulated facts in addressing the previously filed motions for summary judgment.

On November 3, 2000, the trial court entered its "Final Order and Judgment" granting the motion for summary judgment filed by the Attorney General and the Department of Insurance and finding that BCBS is a public benefit corporation.

On November 30, 2000, BCBS reorganized in accordance with the settlement agreement reached with the Attorney General and the Department of Insurance. As of that date, BCBS ceased to exist as a Missouri nonprofit corporation because it had converted to for-profit status by amending its Articles of Incorporation pursuant to § 351.025.2. Subsequently, BCBS merged into RightCHOICE Managed Care, Inc.

On March 9, 2001, because the November 3, 2000 judgment had not resolved all of the issues before the court, the trial court entered its "Judgment" reiterating its previous finding that BCBS was a public benefit corporation and addressing the remaining issues before the court. As part of that judgment, the trial court found that Sarkis had standing to litigate whether BCBS was a public benefit corporation or a mutual benefit corporation.

On appeal, Sarkis contends that the trial court erred in finding that BCBS was a public benefit corporation. Sarkis also claims that the trial court erred in denying his request for a change of judge. In its cross-appeal, BCBS claims that the trial court erred in finding that Sarkis had standing in this matter.

■ We first address BCBS's contention that Sarkis lacked standing to pursue his petition for declaratory judgment.[3] " 'Standing requires that a party seeking relief have a legally cognizable interest in the subject matter and that he has a threatened or actual injury.' " *Wahl v. Braun*, 980 S.W.2d 322, 325 (Mo.App. E.D. 1998) (quoting *Eastern Mo. Laborers Dist. Council v. St. Louis County*, 781 S.W.2d 43, 45 46 (Mo. banc 1989)). " 'Regardless of the merits of appellants' claims, without standing, the court cannot entertain the action.' " *Pace Constr. Co. v. Missouri Highway & Transp. Comm'n*, 759 S.W.2d 272, 274 (Mo.App. W.D.1988) (quoting *Champ v. Poelker*, 755 S.W.2d 383, 386–87 (Mo.App. E.D.1988)).

■ "Our review of whether a litigant has standing to pursue claims is de novo and we do not defer to the trial court's order." *Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood*, 32 S.W.3d 612, 614 (Mo.App. E.D.2000). We determine standing as a matter of law on the basis of the petition and the undisputed facts. *Id.*

■ In order to have standing in a declaratory judgment action, the plaintiff must have a legally protectable interest at stake. *General Motors Acceptance Corp. v. Windsor Group, Inc.*, 2 S.W.3d 836, 839

---

3. "Standing is the requisite interest that a person must have in a controversy before the court." *Missouri Nat'l Educ. Ass'n v. Missouri State Bd. of Educ.*, 34 S.W.3d 266, 275 (Mo.App. W.D.2000).

(Mo.App. E.D.1999). "A legally protectable interest means 'a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, either immediate or prospective.'" *Id.* (quoting *American Econ. Ins. Co. v. Ledbetter*, 903 S.W.2d 272, 274 (Mo.App. S.D. 1995)).

Sarkis claims that he and the class had a legally protectable interest at stake in the underlying action because they were entitled under the June 20, 1995 amendments to the Articles of Incorporation to receive a potential distribution in the event of the corporation's dissolution. Based upon this claimed right, in his counter-claim, Sarkis requested a declaration that BCBS was a mutual benefit corporation and for a declaration that BCBS is prohibited from establishing a charitable trust or transferring assets to RightCHOICE without compensation to subscribers.

Even assuming, arguendo, that Sarkis and the class had some legally cognizable interest based upon this future expectation at the time BCBS's amended petition and Sarkis' counterclaim were filed, an issue which we do not herein decide, that interest no longer existed at the time of judgment. At the time judgment was rendered in the underlying case, the corporation had not dissolved, and the Articles of Incorporation had been amended to provide for a different distribution upon dissolution.[4]

■ Sarkis attempts to avoid the ramifications of the 2000 amendments by arguing that the 2000 amendments were not valid. In this regard, in his counterclaim for declaratory judgment, Sarkis sought a declaration that BCBS was without power to change the 1995 amendments. However, Sarkis clearly lacks standing to contest BCBS's authority to make the 2000 amendments to the Articles of Incorporation. Section 355.141.2 states:

> [a] corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights. The proceeding may be brought by the attorney general, a director, or by a member or members in a derivative proceeding.

Accordingly, by statute, "[o]nly members, directors, or the Attorney General have standing to challenge ultra vires acts of a not-for-profit corporation." *Champ*, 755 S.W.2d at 389.

Sarkis concedes that no member of the class is a director or the Attorney General, and he takes no position on whether they qualify as "members" for purposes of challenging the actions of the board of directors. Section 355.066(21) defines "member" as "any person or persons who on more than one occasion, pursuant to a provision of a corporation's articles or bylaws, have the right to vote for the election of a director or directors" regardless of what a person is called in the articles or bylaws. Section 355.181.1 provides that "[t]he articles or bylaws may establish criteria or procedures for admission of members." Section 355.181.2 further provides

---

4. As noted, *supra*, on January 17, 2000, BCBS's board of directors amended Article VII of its Articles of Incorporation to state:
In the event of the dissolution of the Corporation, the assets of the Corporation remaining after all creditors have been paid and all other claims and obligations of the Corporation have been satisfied or provided for shall be distributed to any one or more organizations designated by the Board of Directors of the Corporation, each of which shall (i) be either a nonprofit public benefit corporation or recognized as exempt under Section 501(c)(3) or Section 501(c)(4) of the Internal Revenue Code or any successor sections, and (ii) have as its principal purpose the promotion of public health in the State of Missouri.

that "[a] corporation is not required to have members."

In this instance, neither the BCBS Articles nor the bylaws affords BCBS policy subscribers the right to vote for directors at any time. Indeed, the Articles of Incorporation were amended in April 1995 to eliminate all members and to make the Board of Directors self-perpetuating. Accordingly, BCBS had no members, and Sarkis and the class cannot challenge the amendment of the bylaws as members. Because Sarkis and the class do not fall within one of the three categories established by statute to challenge the board's actions, they lacked standing to challenge the board's authority to amend the Articles of Incorporation to provide for a different distribution of assets on dissolution. *See Swanger v. National Juvenile Law Ctr.,* 714 S.W.2d 170, 172 (Mo.App. E.D.1986).

Sarkis attempts to circumvent the statutory provisions prohibiting him from challenging the board's actions by claiming that a contractual obligation to Sarkis and the class arose out of the 1995 amendments. In this regard, Sarkis attempts to liken this case to *McDaniel v. Frisco Employees' Hospital Association,* 510 S.W.2d 752, 759 (Mo.App. E.D.1974). In *McDaniel,* the Eastern District of this Court found that the trustees of a nonprofit hospital association acted improperly and in bad faith in amending the corporate charter to circumvent voting rights that had been bestowed on the members of the association and in dissolving the association despite a previous vote by the membership that it not be dissolved.[5] *Id. McDaniel* noted that there is authority for the proposition that there is a contractual relationship "between the corporation and its members arising by virtue of the charter and bylaws." *Id.* at 756.

But *McDaniel* provides no support for Sarkis' claimed standing in the case *sub judice.* *McDaniel* merely stands for the proposition that *members* may have a contractual relationship that can result in standing under some circumstances. As we have just explained, however, Sarkis and the class are not *members.* Thus, *McDaniel* does not remedy Appellants' lack of standing to challenge corporate acts under § 355.141.2.

Sarkis offers no further authority for his proposition that customers of a corporation that contract with the corporation have additional contractual rights arising from the corporation's articles and bylaws and thereby have standing to oppose a corporation's power to amend its articles or bylaws. Section 355.141.2 clearly states that a corporation's power to act may only be challenged by the attorney general, a director, or by a member or members in a derivative proceeding. Because Sarkis and the class do not fall within any of those categories, Sarkis lacked standing to pursue a declaration restricting BCBS's power to establish a charitable trust, to transfer assets without compensation to subscribers, or to amend its articles or bylaws. *See Swanger,* 714 S.W.2d at 172.

In sum, once the amendments became effective, Appellants no longer had any expectancy in the event of dissolution. A declaration regarding whether BCBS is a mutual benefit corporation or a public benefit corporation could have no impact upon Sarkis or the class. Likewise, any declaration regarding the power of BCBS to establish a charitable trust or transfer assets could have no impact on any interest held by Sarkis or the class. Accordingly, Sarkis had no legally protectable interest at stake to give him standing to continue

---

5. The association's membership had voted to reject the trustee's proposal that the association be dissolved, and the trustees had amend-ed the charter to allow for dissolution without a vote of the membership. *Id.* at 759.

to participate in the declaratory judgment action. *General Motors Acceptance Corp.,* 2 S.W.3d at 839. The trial court erred in finding that Sarkis had standing to participate in the declaratory judgment action.

Having found that Sarkis lacked standing to participate in the declaratory judgment action, we need not address his claims on appeal. *See Wahl,* 980 S.W.2d at 325. Sarkis cannot have been aggrieved by the trial court's declaration that BCBS was a public benefit corporation to give him standing on appeal to challenge that judgment. *See Bond v. California Comp. & Fire Co.,* 963 S.W.2d 692, 696 (Mo.App. W.D.1998) ("[A] party not aggrieved by a judgment has no right or standing on appeal to appeal."); *Shelter Mut. Ins. Co. v. Briggs,* 793 S.W.2d 862, 863 (Mo. banc 1990) ("A party is 'aggrieved' within the meaning of the statute when the judgment operates prejudicially and directly on his personal or property rights or interests and such effect is immediate and not merely a possible remote consequence.").

All concur.