

# Missouri Court of Appeals
## Southern District

### In Division

MICHAEL C. LAWS, JR., and
MALINDA A. SALINGER,    )
    )
    Plaintiffs-Appellants,    )
    )
v.    )    No. SD37525
    )    Filed: August 30, 2024
J. CHRISTOPHER ALLEN,    )
Personal Representative, and    )
SUBSTITUTED PARTIES MOREAU,    )
    )
    Defendants-Respondents.    )

### APPEAL FROM THE CIRCUIT COURT OF TEXAS COUNTY

Honorable Kenneth G. Clayton, Special Judge

## VACATED AND REMANDED

Michael Laws, Jr., and Malinda Salinger are the only children (collectively, the Children) of Michael Laws, Sr., who died in 2015 (hereinafter referred to as Decedent or Settlor, as appropriate). The Children brought the underlying action to contest a will executed by Decedent shortly before he died (the 2015 Will), pursuant to which the Children were to receive half of Decedent's estate (the Estate). The 2015 Will directed that Decedent's aunt, Ethel Moreau (Ethel), was to receive the other half of the Estate.[1]

---

[1] During the pendency of this action, Ethel died. Her four children have been substituted as parties (collectively, the Moreaus).

The Personal Representative of the Estate, J. Christopher Allen (the PR), challenged the Children's standing on the ground that they were not "interested persons" within the meaning of § 473.083.1 because they would not benefit from the will contest.[2] The PR argued that, if the Children were successful in their will contest, Decedent's earlier 2013 revocable trust would become effective, and that trust excluded the Children from receiving any of the trust's assets. The trial court agreed and decided that the Children lacked standing to contest the 2015 Will. Therefore, the court entered a summary judgment against the Children on their will-contest claim.[3]

On appeal, the Children present four points for decision. We only need to address Point 2 to decide this appeal. This point contends the trial court erred by determining that the Children lacked standing, in that they stood to benefit financially from a successful contest of the 2015 Will. The Children argue that: (1) there is an inheritance not included in the trust corpus that would pass through the Estate to the Children via intestate succession; and (2) the inheritance is worth more than the assets in the trust; and (3) the Children are, therefore, "interested persons" who have standing to contest the 2015 Will. *See* § 474.010(2)(a); § 473.083.1. Because this point has merit, we vacate the judgment and remand for further proceedings consistent with this opinion.

## Standard of Review

"Because standing is required to give a court the authority to address substantive issues, it is a threshold issue we must consider." ***Four Star Enters. Equip., Inc. v.***

---

[2] All statutory references are to RSMo (2000) unless otherwise indicated. All rule references are to Missouri Court Rules (2022).

[3] We issued a show-cause order because the initial ruling was not denominated as a judgment. *See* Rule 74.01(a). That was corrected when a properly denominated judgment was filed as part of a supplemental legal file.

*Employers Mut. Cas. Co.*, 648 S.W.3d 903, 907-08 (Mo. App. 2022); *see* **Byrne & Jones Enters., Inc. v. Monroe City R-1 Sch. Dist.**, 493 S.W.3d 847, 851 (Mo. banc 2016). The reason for this requirement was explained by our Supreme Court in **Schweich v. Nixon**, 408 S.W.3d 769 (Mo. banc 2013):

> The first two elements of justiciability are encompassed jointly by the concept of "standing." "Prudential principles of justiciability, to which this Court has long adhered, require that a party have standing to bring an action. Standing requires that a party have a personal stake arising from a threatened or actual injury." *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986). *Accord*, *Harrison v. Monroe Cnty.*, 716 S.W.2d 263, 265-66 (Mo. banc 1986) (standing is "a component of the general requirement of justiciability" and is the state analogue to the federal "case or controversy" requirement).

**Schweich**, 408 S.W.3d at 774. Thus, "[s]tanding is a necessary component of a justiciable case that must be shown to be present prior to adjudication on the merits." **Id**.

As explained in **Klenc v. John Beal, Inc.**, 484 S.W.3d 351 (Mo. App. 2015), "disposing of a case for lack of standing is not a disposition of the merits of the case. Thus, it is not appropriate to enter summary judgment – an inherently merits-based disposition – when the party seeking relief lacks standing." **Id**. at 354. Therefore, even if standing is challenged via motion for summary judgment or other motion in which matters outside the pleadings are considered, the court must enter a dismissal without prejudice, as opposed to summary judgment, if standing is lacking. *See, e.g.*, **Schweich**, 408 S.W.3d at 779; **Four Star Enters.**, 648 S.W.3d at 910; **Foster v. Dunklin Cnty.**, 641 S.W.3d 421, 424 (Mo. App. 2022); **Borges v. Missouri Pub. Entity Risk Mgmt. Fund**, 358 S.W.3d 177, 184 (Mo. App. 2012). Thus, the trial court in the case at bar erred by granting a summary judgment against the Children, because their will-contest claim was not decided on the merits.

In ***Sunshine & Gov't Accountability Project v. Missouri House of Representatives***, 688 S.W.3d 704 (Mo. App. 2024), the western district of this Court correctly noted our standard of review of a ruling on standing:

> "Regardless of the procedural context, our review of the court's determination regarding standing is de novo, and the party seeking relief bears the burden to establish standing." *Klenc*[,] 484 S.W.3d [at] 354[.] "**We determine standing as a matter of law on the basis of the petition and the undisputed facts**." *Id.* *See also Borges*[,] 358 S.W.3d [at 180] ("We consider the petition along with any other non-contested facts to determine whether the petition should be dismissed due to Petitioners' lack of standing.").

*Sunshine*, 688 S.W.3d at 713-14 (bold emphasis added); *see also **Pentecost v. Webster***, 674 S.W.3d 195, 205 (Mo. App. 2023) (an appellate court evaluates standing based on the language of the party's petition and undisputed facts); ***Four Star Enters.***, 648 S.W.3d at 908 (a party's standing to sue is a question of law that we review *de novo* and determine on the basis of the petition, along with any other undisputed facts); ***Stander v. Szabados***, 407 S.W.3d 73, 78 (Mo. App. 2013) (same holding); ***Blue Cross & Blue Shield of Missouri v. Nixon***, 81 S.W.3d 546, 551 (Mo. App. 2002) (appellate review of standing is *de novo*, with no deference given to the trial court's decision, and is determined as a matter of law based on the petition and the undisputed facts). When reviewing a ruling on standing, we accept as true all of the "well-pleaded allegations" of the Children's petition. ***Lewis v. Mason***, 561 S.W.3d 443, 445 (Mo. App. 2018); *see also **Missouri Coal. for Env't v. State***, 579 S.W.3d 924, 926 (Mo. banc 2019). The allegations in the petition and the undisputed facts relevant to the Children's second point are summarized below.

**Factual and Procedural Background**

On May 7, 2013, Settlor executed the Michael Laws Living Trust Agreement (the Trust). Settlor named himself as the trustee. As Settlor, he transferred to the trustee "the

4

property described in the attached Schedule of Property." The Trust then stated that "[s]uch [T]rust property, and all other property added to the [T]rust in accordance with the provisions of this instrument, and all investments and reinvestments thereof[,] shall be held in [T]rust as described herein." Article IV, paragraph M authorized the trustee to "receive any property, real or personal, to be added to the [T]rust, if the trustee consents in writing, by lifetime or testamentary transfer or otherwise[.]" In the attached Schedule of Property, Decedent as Settlor stated:

> I hereby assign, transfer and convey to MICHAEL LAWS, Trustee of the MICHAEL LAWS LIVING TRUST AGREEMENT dated 7 May, 2013, all of my right, title and interest to all of my household items, furniture, clothing, jewelry, livestock, inventory, tools, equipment, animals, and all other tangible personal property owned by me. However, automobiles and any other motor vehicles, the ownership of which is evidenced by a certificate of title, are not included in this assignment. The property included in this assignment constitutes the initial property to be held pursuant to the terms of such Trust agreement.

The Schedule of Property was signed by Settlor and contained a paragraph labeled ACCEPTANCE, which stated: "We acknowledge receipt of the above-referenced personal property and accept assignment of the property in our capacity as [t]rustee." This Acceptance was signed by Settlor as the trustee.

Article II of the Trust addressed what should occur upon Settlor's death. In relevant part, it stated:

> Following my death, the [successor] trustee shall manage and distribute the [T]rust estate, including any property received from my probate estate or estates, as follows:
>
> A. [provision dealing with payment of debts]
>
> B. [provision dealing with distribution of tangible personal property described in a written statement]

5

C. Remaining Property: The [successor] trustee shall liquidate the remaining [T]rust estate and pay the proceeds to the American Red Cross for the general purposes of such non-profit organization.

This article also stated that the Children "are not being provided for in this Living Trust Agreement" and that Settlor's decision to do so was intentional. In 2014, Settlor amended this provision to allow the trustee to liquidate the Trust estate and hold those proceeds for investment and/or distribution to any non-profit organization that the trustee deemed meritorious (hereinafter referred to as the 2014 Amendment).

Article VI permitted Settlor to terminate the Trust by delivering to the trustee a written notification to that effect. Article IX, paragraph A appointed Settlor as the trustee and authorized the appointment of a successor trustee in the event of Settlor's resignation, disability or death. Article X stated that the Trust was be to construed and administered, and its validity determined, by Missouri law.

The same day Settlor executed the Trust, he also executed a Last Will and Testament. This was a pour-over will because, after authorizing payment of lawful debts and last expenses and distributing certain tangible personal property by written statement, all the remainder of the Estate was given, devised and bequeathed to the then-current trustee of the Trust (hereinafter referred to as the 2013 Pour-over Will).[4]

On January 15, 2015, Decedent executed the 2015 Will.[5] This will revoked all former wills and codicils made by Decedent. The 2015 Will provided for the following

---

[4] A pour-over will permits a settlor who has created an *inter vivos* trust to add property to that trust, by will at death, to be held, administered, and distributed in accordance with the terms of the trust. *See* RESTATEMENT (THIRD) OF TRUSTS § 19 cmt. a (2003); § 456.021 RSMo Cum. Supp. (2013); ***Ivie v. Smith***, 439 S.W.3d 189, 208 n.18 (Mo. banc 2014) (recognizing that § 456.021 permits pour-over wills).

[5] The PR's law firm prepared the 2015 Will. A different attorney, however, was involved in preparing the 2013 Pour-over Will, the Trust, and the 2014 Amendment.

distribution of all of Decedent's property: "Twenty-five (25%) to my son, Michael C. Laws, Jr., and Twenty-five (25%) to my daughter[,] Malinda A. Salinger, and Fifty (50%) to my aunt[,] Ethel Moreau." The same day that Decedent executed the 2015 Will, he also executed a written revocation of the Trust and its 2014 Amendment (the Revocation).

On June 1, 2015, Decedent died, unmarried, in Texas County, Missouri. A few days later, the 2015 Will was presented to and filed in the probate division of the circuit court of Texas County. Notice of Letters Testamentary was first published on June 18, 2015.

On December 15, 2015, the Children filed their petition to contest the 2015 Will. No one presented the 2013 Pour-over Will for admission to probate within 30 days after the filing of the will contest, as required by § 473.050.3(1).

The Children's petition alleged that Decedent lacked testamentary capacity to execute the 2015 Will, and that it was procured by the undue influence of Ethel. Ethel was a sister to two other sisters, both of whom pre-deceased Decedent: Decedent's mother (Mother); and Mary Duet Mataya (Mary). Mary disinherited Ethel and left all of her property to Mother, who in turn devised or bequeathed all of her property to her only child, Decedent. Although Mary died in 2008, the details of her estate were not available until 2017.

In 2018, the Estate received the inheritance proceeds from the succession of Mary (the Inheritance). The Inheritance totaled $712,309, and was included in the April 2018 annual settlement of the Estate prepared by the PR.[6]

---

[6] The total amount of the Inheritance was derived from $681,684 in "movable property" and $30,625 in "immovable property."

Thereafter, the PR challenged the Children's standing to bring the will-contest proceeding. The PR argued that, if the Children were successful in contesting the 2015 Will (under which they would receive half the Estate), the Trust would remain in effect.[7] Pursuant to the terms of the Trust, the Children would not receive any of the Trust assets. Therefore, the PR argued that the Children were not "interested persons" who had standing to bring the action pursuant to § 473.083.1. To support this argument, the PR directed the trial court's attention to: (1) the 2015 Will; (2) the Revocation; (3) the Trust; (4) the 2014 Amendment; and (5) the 2013 Pour-over Will. With respect to what assets were in the Trust, the PR simply stated that Decedent "funded [the Trust] with his assets." Except for the initial transfer of Decedent's tangible personal property into the Trust, no other documents were presented to the trial court showing that any additional assets whatsoever had been transferred to the Trust prior to Decedent's death. The PR's argument did not even address the Inheritance, which was raised by the Children in their response.

The trial court entered summary judgment against the Children on their will-contest claim for lack of standing. The court assumed the Children would be successful in setting aside the 2015 Will and the Revocation of the Trust, since both were executed the same day. Noting that no challenge had been lodged against the Trust, the court determined that the Trust would remain in effect, and under the Trust, the Children "would be left with none of the estate of Decedent." That rationale did not: (1) discuss the existence of the Inheritance as an Estate asset; (2) explain how those proceeds could possibly be considered part of the Trust corpus; or (3) provide a reason why the Inheritance proceeds would not be distributed

---

[7] The PR and the Children agreed that, if the will contest were successful, there would be grounds to set aside the Revocation of the Trust, since both the 2015 Will and the Revocation were executed on the same day.

by intestate succession if the 2015 Will was set aside. Nonetheless, the trial court concluded that "pursuant to section 473.083.1 [and] the interpretation of that section as it relates to parties who may contest a will, [the Children] have no standing to contest the [2015 Will] of Decedent." This appeal followed.

**Discussion and Decision**

While the Children present four points, we need only address Point 2 since it is dispositive. Point 2 contends that the trial court erred in granting summary judgment against them on their will-contest claim due to lack of standing.[8] As previously established, the trial court erred by granting a summary judgment against the Children because their will-contest claim was not decided on the merits. We will review this point challenging a determination of standing based on the allegations of the will-contest petition and the undisputed facts. *See, e.g.*, **Sunshine**, 688 S.W3d at 713-14. According to the Children, they stand to benefit from a successful contest of the 2015 Will, whether or not the Trust is deemed to be effective, because: (1) a successful contest of the 2015 Will would cause all of the assets in the Estate to be distributed by intestate succession pursuant to § 474.010(2)(a), passing all of those assets to the Children as sole heirs; and (2) the assets that would pass through the Estate are of sufficient value to benefit the Children. We agree.

Standing in a will contest is determined by § 473.083. This statute provides that "any person interested in the probate of a will" may file a petition contesting the validity of the will. The statute further specifies that:

> [a]n heir, devisee, trustee or trust beneficiary under another purported will
> of the same decedent, and a person who has acquired, before or after the

---

[8] During this appeal, the Moreaus filed a motion with this Court to strike an agreement among other parties relating to the summary judgment procedure. The motion to strike is denied as moot because the entry of a summary judgment on the merits is incompatible with our required standard of review.

9

death of the testator, all or part of the interest of such heir or devisee by purchase, gift, devise, intestate succession, mortgage or lien, is interested in the probate of a will for purposes of this section.

§ 473.083.1.  "In a will contest, standing has been described as belonging to one who would either gain or lose under the contested will." *Salvation Army, Kansas v. Bank of Am.*, 435 S.W.3d 661, 666 (Mo. App. 2014) (internal quotation and citation omitted); *Chariton Grove Cemetery Ass'n v. Love*, 640 S.W.3d 776, 782 (Mo. App. 2022).  Our Supreme Court has explained that, in order to have standing, a will contestant must have a "financial interest in the estate, and one which would be benefited by setting the will aside." *State ex rel. Cooper v. Cloyd*, 461 S.W.2d 833, 835 (Mo. banc 1971) (citations omitted); *see also Mills v. Kettler*, 573 S.W.2d 672, 674 (Mo. App. 1978) (interest referred to in the statute must be a *direct* financial interest such that a will contestant "would benefit by setting aside a will, or would lose by its establishment").  For the following reasons, the Children are "interested persons," who have standing to bring the underlying will contest pursuant to § 473.083.1.

First, the 2018 Inheritance in the amount of $712,309 is a part of the Estate assets and was included in the 2018 annual settlement of the Estate prepared by the PR.  Both the trial court and the PR assumed that these assets are part of the Trust corpus, but that assumption is simply wrong.  By the express terms of the Trust, the only property included in the corpus consisted of "property added to the [T]rust in accordance with the provisions of this instrument[.]"  The only property added to the Trust corpus pursuant to the terms of the Trust was the transfer of Decedent's tangible personal property when the Trust was created in May 2013.  No other formal transfers of assets into the Trust appear in the record.  Moreover, Decedent had already died when the Inheritance was received by the Estate, so it would have been impossible for him to have transferred those assets to the Trust.

10

Article IV, paragraph M also authorized the trustee to "receive any property, real or personal, to be added to the [T]rust, if the trustee consents in writing, by lifetime or testamentary transfer or otherwise[.]" This provision is consistent with § 456.021 RSMo Cum. Supp. (2013), which states in relevant part:

> A devise or other transfer, the validity of which is determinable by the law of this state, may be made by a will or other instrument of transfer … to the trustee or trustees of a trust established or to be established by the testator or transferor … if the trust is identified in the testator's will or the instrument of transfer and its terms are set forth in a written instrument.

*Id*. We interpret the phrase "or otherwise" in the Trust language to refer to non-probate transfers, authorized by written instrument transferring assets to the Trust after the Settlor's death pursuant to pay-on-death or transfer-on-death provisions. *See, e.g.*, ***Ivie v. Smith***, 439 S.W.3d 189, 193-94 (Mo. banc 2014) (a non-probate transfer is a transfer of property taking effect upon the death of the owner pursuant to a beneficiary designation); ***Estate of Keen***, 488 S.W.3d 73, 85 (Mo. App. 2016) (a pay-on-death account is a non-probate transfer of property taking effect upon the death of the owner pursuant to a beneficiary designation). There is nothing in the record to show that any assets were transferred to the Trust via non-probate transfer after Settlor's death.

Therefore, the only other way for any assets to be added to the Trust corpus after Settlor's death was by way of a testamentary transfer. The 2013 Pour-over Will would have provided a mechanism for that to occur, but no one presented this earlier will for admission to probate within 30 days after the filing of the will contest, as required by § 473.050.3(1). "A will not presented for probate within the time limitations provided in subsection 3 of this section is **forever barred** from admission to probate in this state." § 473.050.5 (bold emphasis added); *see, e.g.*, ***Chariton Grove Cemetery Ass'n***, 640 S.W.3d at 782 (earlier will forever barred from admission to probate due to lack of timely presentation); *see also* Hanna,

11

4 Mo. Prac., Probate Code Manual, § 473.050 (2d ed., Dec. 2022 Update) (noting that when a decedent has executed two or more wills and the later of those wills is offered for probate, all earlier wills must be presented in the time and under the procedure outlined in § 473.050 in order to preserve them for probate if the later will is successfully contested); *see, e.g.*, ***Stroup v. Leipard***, 981 S.W.2d 600, 606 (Mo. App. 1998) (earlier will timely presented deemed effective after later will was successfully contested and rejected). Here, because the 2013 Pour-over Will is forever barred from admission to probate in this matter, there is no mechanism by which the Inheritance could be transferred from the Estate to any successor trustee of the Trust.

Despite all of this, the PR argues that the probate division could initiate a proceeding to transfer the Inheritance to the Trust corpus because:

> A court can modify or terminate a trust, and order the trustee to distribute the trust property in a manner consistent with the purposes of the trust. Section 456.4-414 RSMo. A court can also "modify the management or administrative terms of a trust" in accordance with the "settlor's probable intention." Section 456.4-412 RSMo. Thus, even if Decedent's [2013 Pour-over Will] could not be probated, an appropriate judicial proceeding could be pursued as to the [T]rust to declare rights relating to the property thereto, including the ownership thereof, or modify the terms thereof, and administer the [T]rust in the event that the will contest is successful – but only in accordance with the Decedent's intent, which intent was to disinherit [the Children].

This argument lacks merit for the following reasons.

The PR cites no case authority to support this argument, and we are aware of none. As already discussed, the Inheritance is a part of the Estate assets. Unlike § 456.021, neither of the statutes cited by the PR provide any provision for *adding* assets to a trust. Instead, each one deals with "trust property[,]" which we interpret to mean assets already in a trust. The first cited statute, § 456.4-414, states:

12

1. After notice to the qualified beneficiaries, the trustee of a trust consisting of trust property having a total value less than two hundred fifty thousand dollars may terminate the trust if the trustee concludes that the value of the trust property is insufficient to justify the cost of administration.

2. The court may modify or terminate a trust or remove the trustee and appoint a different trustee if it determines that the value of the trust property is insufficient to justify the cost of administration.

3. Upon termination of a trust under this section, the trustee shall distribute the trust property in a manner consistent with the purposes of the trust.

4. This section does not apply to an easement for conservation or preservation.

§ 456.4-414 RSMo Cum. Supp. (2018). The purpose of this section is to authorize modification or termination of an uneconomic trust. No provision of this statute authorizes the court to add assets. Therefore, § 456.4-414 is not relevant to our decision. The same is true of § 456.4-412, which states:

1. The court may modify the dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.

2. The court may modify the management or administrative terms of a trust if modification will further the purposes of the trust.

3. Upon termination of a trust under this section, the trustee shall distribute the trust property in a manner consistent with the purposes of the trust.

*Id*. As subsection 3 states, a trustee can distribute "the trust property" in a manner consistent with the trust purposes. Here, the Inheritance is not, and never has been, Trust property. No provision in this statute authorizes the addition of assets to a trust. Furthermore, § 456.4-412.1 authorizes a court to "modify the dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will

13

further the purposes of the trust." The dispositive terms of a trust dictate who gets what, rather than what property is in a trust. Thus, § 456.4-412 is also not relevant to our decision.

Lastly, assuming *arguendo* that we are required to review this ruling using summary-judgment standards, our decision would remain the same. The first inquiry in such a review is the identification of whether the movant is a claimant or defending party. ***Great S. Bank v. Blue Chalk Constr., LLC***, 497 S.W.3d 825, 828 (Mo. App. 2016). The Children bore the burden to prove standing. Therefore, the PR is in the position of a defending party on that issue.

The second inquiry is whether the movant's motion for summary judgment properly pleads all the elements detailed in Rule 74.04(c)(1). ***Great S. Bank***, 497 S.W.3d at 828. As a defending party, the PR can establish a *prima facie* showing of a right to summary judgment as a matter of law if he can present:

> (1) facts that negate any one of the claimant's elements facts,
>
> (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or
>
> (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id*. at 829.

If a movant's motion for summary judgment fails to make a *prima facie* showing of a right to judgment as a matter of law, any further inquiry into the summary-judgment record should end, and the motion for summary judgment should be denied. ***Hartwell v. Am. Fid. Assurance Co.***, 607 S.W.3d 807, 813 (Mo. App. 2020); ***Columbia Mut. Ins. Co. v. Heriford***, 518 S.W.3d 234, 241 (Mo. App. 2017). Until the movant meets his or her burden pursuant

14

to Rule 74.04(c), the non-movant "does not have to show anything." ***Williams v. Hubbard***, 455 S.W.3d 426, 435 (Mo. banc 2015).

Here, the Children have alleged that the Inheritance is already in the Estate and that it would be distributed to them via intestate succession if the will contest is successful. The PR's motion for summary judgment sought to negate that element fact only by stating in paragraph 11: "The decedent Michael C. Laws, funded his Trust, as amended 'Exhibit C' and 'Exhibit D', with his assets." This statement was not supported by a specific reference to the pleadings, discovery, exhibits or affidavits demonstrating the lack of genuine issue as to such fact. *See* Rule 74.04(c)(1); ***Smith v. Taney Cnty.***, 552 S.W.3d 745, 749 (Mo. App. 2018) (compliance with Rule 74.04 is mandatory). Thus, the PR failed to make a *prima facie* showing that he was entitled to judgment as a matter of law because the Inheritance was part of the Trust corpus. *See* ***Parker v. Castle View Country Club, Inc.***, 690 S.W.3d 918, 924 (Mo. App. 2024) (by not presenting uncontroverted material facts to support its motion for summary judgment, movant failed to make a *prima facie* showing of right to judgment as a matter of law). Thus, even under a summary-judgment review, the trial court erred by granting summary judgment against the Children on their will-contest claim.

In conclusion, the Children stand to benefit from contesting the 2015 Will, pursuant to which they would receive half of the Estate. A successful contest of the 2015 Will – the only will timely presented to the probate division – would render the Estate an intestate estate, and the Children would inherit the entire Estate as sole heirs. *See* ***In re Brockmire***, 424 S.W.3d 445, 446-47 (Mo. banc 2014) (when a person dies "intestate" *i.e.*, "without a will, the person's estate is distributed according to the provisions of sections 474.010 to 474.060"); § 474.010(2)(a) (if no surviving spouse, intestate estate shall descend and be distributed "to the decedent's children"). That gives the Children standing to challenge the

2015 Will, because they would be financially benefitted from setting the will aside. *See State ex rel. Cooper*, 461 S.W.2d at 835-36; *Mills*, 573 S.W.2d at 674.

That remains true even if the Revocation of the Trust is set aside. The only reason the Trust assets were significant to the trial court and the PR was because they assumed the Inheritance was part of the Trust corpus. As that assumption was false, the value of whatever assets are part of the Trust corpus is irrelevant to the issue of the Children's standing to contest the 2015 Will. A successful will contest would mean the Children would receive all of the Estate assets, rather than only half. *See Salvation Army*, 435 S.W.3d at 666 (for standing, a will contestant must "either gain or lose under the contested will"); *see also Danforth v. Danforth*, 663 S.W.2d 288, 294 (Mo. App. 1983) (in assessing will contestant's standing, "the proper focus lies in the contestant's standing to benefit from setting the will aside"). Because the Children would gain financially if the contested 2015 Will were to be set aside, they have standing pursuant to § 473.083.1.

For all of these reasons, the trial court erred in determining that the Children were not interested persons under § 473.083.1 and therefore lacked standing to bring their will-contest action. The Children's second point is granted. The summary judgment is vacated, and the matter is remanded for further proceedings consistent with this opinion.


JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

JACK A. L. GOODMAN, C.J. – CONCUR